THE STATE v. CHARLES CANNON, Appellant.

Division Two, February 7, 1911.

1. **MOTIONS: No Exceptions: Review.** Dilatory motions filed by appellant in the trial court will not be considered on appeal if neither they nor the rulings thereon are preserved in the bill of exceptions.

2. **ARRAIGNMENT: Demurrer: Withdrawal of Plea.** The filing of a demurrer to the information did not have the legal effect of withdrawing the plea of not guilty previously entered, and after the overruling of the demurrer it was not necessary to rearraign defendant.

3. **MOTION TO ELECT: Two Counts: Gambling Device.** Where the information charged defendant with setting up and keeping divers gaming tables and gambling devices, in two counts, the only difference therein being that in the first the gaming table

described was a poker table with the paraphernalia incident to the playing of poker, and the second described a crap table and the dice used in playing a crap game, an averment in each that the defendant enticed and permitted divers persons to bet and play thereon did not make the count double, and the motion to require the State to elect on which of the several charges contained in each count it would proceed to trial, was properly overruled.

4. ———: ———: ———: Instruction to Convict Upon Both: Convicted of Only One. The offense may be charged in different counts to meet the evidence; but if both counts charge the same offense of setting up and keeping a gaming table and a gambling device, in one that the gambling device was a poker table and paraphernalia incident thereto, and in the other that it was a crap table and dice, defendant cannot be convicted upon both counts in the same trial, and it is error to refuse to instruct the jury that defendant cannot be convicted upon both counts. But if an instruction is given authorizing a conviction upon both, and the jury return a verdict of guilty upon one only, the error is not prejudicial.

5. GAMBLING DEVICES: Poker Tables. The statute is not leveled simply against such gaming tables as are used in games known as "bank games." It has been so often held that a poker table set up for gaming purposes comes within its provisions that the question is not open for further consideration.

6. SUFFICIENT EVIDENCE: Defendant as Person Who Set Up Device, etc. Where the evidence is undisputed that a gambling device and gaming table had been set up and kept, at which a large number of persons played poker for money, testimony by the witness in charge of the game that defendant had employed and paid him to take charge of the tables and had furnished him money when it was needed for use in the games; and by other witnesses that defendant's coindictee, who was much in evidence around the gaming room and saloon, had furnished money to defendant to be used when needed in keeping up the games; that defendant was seen around the poker tables in charge of the game, sometimes playing himself and attending to the rake-off which went to the house, or standing around watching the games; and that a few days before the date of the offense charged, he had painted the room and made other repairs, is substantial evidence of his guilt, and its weight and credibility were for the jury; and though the main witness (the dealer) by his testimony showed himself an accomplice, yet if the court instructed the jury that his testimony was to be received with great caution, the judgment of conviction will not be interfered with.

Appeal from Jasper Circuit Court.—*Hon. Henry L. Bright,* Judge.

AFFIRMED.

*Clay & Davis* for appellant.

(1)   Defendant was not rearraigned after the withdrawal of his plea of not guilty.   (2)   There is no evidence to support the verdict, and the peremptory instruction, requested by defendant and refused by the court, should have been given.   The poker table in question in this case is not a gambling device within the meaning of Sec. 4750, R. S. 1909.   State v. Etchman, 184 Mo. 193; State v. Mathis, 206 Mo. 604; State v. Hall, 228 Mo. 456.   A crap table, such as the evidence in this case shows the table at issue under the second count of the information to be, is a "bank" table.   So, also was the crap table in the case of State v. Holden, 203 Mo. 581, a "bank" table.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1)   The information is valid and sufficiently charges the offense in the language of the statute and is good.   R. S. 1909, sec. 4750.   The prohibition of the statute includes the setting up and keeping of any kind of gambling device adapted, designed and devised for the purpose of playing any game of chance for money or property.   State v. Rosenblatt, 185 Mo. 114; State v. Mathis, 206 Mo. 610; Kelly's Crim. Law, sec. 950; State v. Locket, 188 Mo. 418; State v. Hall, 228 Mo. 456.   (2)   The two offenses alleged in both counts of the information were based upon Sec. 4750, R. S. 1909, and the court did not err in overruling appellant's motion to quash.   State v. Carragin, 210 Mo. 363.   (3)   The demurrer was properly overruled as

the information was well enough. See authorities under 1. (4) The instructions are full and complete and no complaint can be successfully alleged against them. State v. Rosenblatt, 185 Mo. 114; State v. Mathis, 206 Mo. 610. (5) The jury settled the conflict in the evidence, and this court will not interfere on that score. State v. Matthews, 202 Mo. 148; State v. Tetrick, 199 Mo. 100; State v. Williams, 186 Mo. 128. There was an abundance of evidence to take the case to the jury.

KENNISH, P. J.—At the February term, 1910, of the circuit court of Jasper county, the prosecuting attorney filed an information jointly charging the appellant, Charles Cannon, F. W. Potts and L. W. Smith, under section 4750, Revised Statutes 1909, with the offense of having set up and kept divers gaming tables and gambling devices. The information charged the offense in the language of the statute and in two counts, the only difference in the counts being that the gaming table described in the first is a poker table with the paraphernalia incident to the playing of that game, while the second describes a crap table and the dice used in the playing of the crap game.

The record shows the filing of certain dilatory motions by the defendants, but as these motions and the rulings of the court thereon are not preserved in the bill of exceptions, they are not open to review on this appeal and need not be further noticed.

The defendants waived formal arraignment and entered a plea of not guilty. Before announcing himself ready for trial the defendant Charles Cannon moved the court for a separate trial and a severance was granted. Thereupon the defendant, Charles Cannon, demurred to the information on the ground that it did not state facts sufficient to constitute an offense under the laws of this State. The demurrer was

overruled and the defendant was put upon his trial, which resulted in a verdict of guilty under the first count of the information, his punishment being assessed at a term of two years in the penitentiary, and an acquittal on the second count. After the proper motions were filed and overruled, judgment was pronounced, and the defendant appealed to this court.

The evidence for the State tended to prove these facts:

The Southern Club Saloon building is located on the corner of Church and Allen streets in Webb City, this State. It is a double, two-story structure, and at the time of the alleged offense one room on the ground floor was occupied as a dramshop, known as the Southern Club Saloon, and the other room on the ground floor was used as a pool hall.

The large room in which the defendant was charged with keeping gaming tables was upstairs over the pool hall and could be reached by two inside stairways, one leading up from the rear of the saloon and another from the front; also by a third stairway from the outside. This room over the pool hall, on the night of the 11th of December, 1909, and for some weeks before, was fitted up with poker and crap tables and had been used as a common gambling room. On the last mentioned date, while gambling on both the poker and crap tables was going on, officers raided the place, found a large number of men therein, made several arrests, and seized the tables, gambling devices and paraphernalia used in carrying on the games. These tables and devices were produced in the court room at the trial, were referred to and identified by the witnesses, and were introduced in evidence. They were tables adapted, devised and designed for the purpose of playing games of chance for money, property and poker chips, and were so used on the night of the 11th

232 Sup—14

of December, 1909, and for several weeks prior to that date.

The defendant and his codefendant, Potts, were generally at this gambling room, and there was evidence that each had supplied money to continue the games at times when more money was needed for that purpose. Once or twice Potts had furnished the necessary money to the defendant when the latter was acting as dealer at the crap table. A. O. Walker, a dealer at one of the tables when the raid was made, testified that he was employed and paid for his services at said gambling room by the defendant; that he had seen the defendant run the said poker table, sometimes playing and taking charge of the game, looking after the rake-off which went to the house, and that the defendant had furnished him with the sum of forty-two dollars and fifty cents that night to use in the game at the crap table.

The defendant testified in his own behalf and denied that he had employed Walker as a dealer at the gambling room, or that he had furnished Walker any money to be used in the games, and further denied that he had any interest in the gambling rooms located over the Club Saloon or adjacent to it.

The defendant moved the court to require the State to elect upon which count of the information it would ask a conviction, both at the close of the evidence for the State and at the close of all the evidence. The defendant also moved the court to require the State to elect upon which of the several charges contained in each count of the information it would proceed to trial.

The court overruled the motions to elect, submitted the case to the jury upon instructions authorizing a verdict of guilty upon one or both counts of the information, or an acquittal upon one or both counts, accordingly as they should find and believe from the evi-

dence.   The jury returned a verdict of guilty under the first count and of acquittal upon the second count, as before stated.

I.   The information and each count thereof properly charges the offense in the language of the statute, is in form as approved by this court, and the court did not err in overruling the demurrer.   [State v. Chauvin, 231 Mo. 31; State v. Rosenblatt, 185 Mo. 114; State v. Mathis, 206 Mo. 604; State v. Lee, 228 Mo. 480.]

II.   It is assigned as error that the defendant was not rearraigned after the withdrawal of his plea of not guilty.

The record shows that the defendant waived formal arraignment and entered a plea of not guilty, and it does not show that this plea was withdrawn.   The filing of the demurrer thereafter did not have the legal effect of withdrawing the plea of not guilty, and after a ruling thereon a new arraignment was not necessary. [State v. Gieseke, 209 Mo. l. c. 340.]

III.   Complaint is made that the court erred in overruling defendant's motion to require the State to elect upon which of the several charges contained in each count of the information it would proceed to trial.

Each count charged the setting up and keeping of one gaming table only, and the averment that the defendant enticed and permitted divers persons to bet and play thereon did not make the count double, and the motion to elect was properly overruled.   [State v. Ames, 10 Mo. 743; State v. Nelson, 19 Mo. 393.   See also State v. Mathis, 206 Mo. 604.]

IV.   At the close of the evidence for the State and again at the close of all the evidence, the defendant moved the court to require the State to elect upon which count it would ask a conviction, and defendant's instruction numbered 4, which the court refused, de-

clared the law to be that the jury. could not convict upon both counts of the information, although they should believe from the evidence that the defendant set up and kept both tables as charged in the two counts of the information. It is contended by appellant that the court erred in not requiring the prosecuting attorney to elect, and in refusing said instruction numbered 4.

The defendant's instruction numbered 4, in so far as it declared the law that the defendant could not be convicted upon both counts, was a correct statement of the law applicable to the facts in evidence, and the court should have required the prosecuting attorney to elect upon which count he would ask a conviction, or have submitted the case to the jury upon instructions authorizing a conviction under either count, as they found the facts to be, but not upon both. [State v. Carragin, 210 Mo. l. c. 371.] In the Carragin case, at the close of an exhaustive review of the cases of this and other courts upon the subject of the joinder of felonies in the same indictment or information, this court at page 371, speaking through GANTT, J., said: "We know of no case under our practice in which an accused may be tried and convicted of two distinct felonies except in the case of burglary and larceny, which is expressly allowed by statute." It was held in the Carragin case that reversible error was committed by the trial court in instructing the jury that they might find the defendant guilty upon both counts of the indictment and in refusing to require the prosecuting attorney to elect. However, in that case the defendant was convicted under both counts, so that the error of the court was clearly prejudicial.

The counts in the information in this case charged the same offense, the gambling table and gambling device as described being the only difference, and it is always competent for the State to charge the offense

and have the same submitted to the jury upon two or more counts when the offense is so charged in the different forms to meet the evidence as it may develop at the trial, and but one conviction is sought. [State v. Carragin, 210 Mo. 351; State v. Hargraves, 188 Mo. 337; State v. Sutton, 64 Mo. 107; Kelley's Crim. Law and Prac., sec. 203.]

The court was not in error in submitting the case to the jury upon both counts in the alternative and authorizing a conviction under either as they might find the facts to be. The error consisted in authorizing a conviction under both counts, and in thus treating the two counts as charging separate felonies, instead of the same felony charged in different forms. As the jury did not act upon the erroneous instruction, but convicted upon one count only, the question now before us is not, as in the Carragin case, as to whether a conviction upon both counts can be upheld, but rather, did the court properly instruct the jury and did the evidence warrant the verdict upon the first count, under which alone a verdict of guilty was returned?

The jury was fully instructed upon all questions of law applicable to the evidence upon the first count of the information upon which the verdict was based, and although the court by its instructions also authorized a verdict of guilty upon the second count, yet, as the defendant was acquitted upon that count, he cannot be heard to complain of error which did not operate to his prejudice.

V. Numerous complaints have been made as to alleged errors in the refusing and giving of instructions, and almost every page of the transcript of the evidence contains one or more objections by defendant and exceptions saved to the ruling of the court thereon.

We have examined these complaints and alleged errors, and find that practically all of them have been

answered by the recent decisions of this court constru-
ing the statute upon which this prosecution was based.
Questions as to whether the statute is leveled against
only such gaming tables as are used in games known
as "bank games," or whether a poker table set up for
gaming purposes comes within its provisions, which
are ably discussed in appellant's brief, have been
passed upon by this court adversely to appellant's con-
tentions, and we are not disposed to reconsider them in
each subsequent appeal. [State v. Chauvin, 231 Mo.
31; State v. Mathis, 206 Mo. 604; State v. Hall, 228 Mo.
456.]

VI. It is earnestly urged that the court erred in
refusing the defendant's instruction in the nature of
a demurrer to the evidence under the first count of
the information, and this complaint necessitates a brief
review of the incriminating facts in evidence relied
upon to sustain the verdict.

The testimony of all the witnesses who testified
upon the subject leaves no room for doubt that the
statute against setting up and keeping gaming tables
and devices, as construed in the decisions of this court,
was being openly and flagrantly violated in the room
over the pool hall in the Southern Club Saloon building
on the night of December 11, 1909, and for some weeks
prior thereto. The tables and paraphernalia, the use
of chips and money in the poker games played, the
large number of persons permitted to engage in the
games and the take-off charged by the house, of which
facts there is no dispute, make this case exceptional in
the satisfactory evidence by which these facts were
proven. The important remaining question is: Was
there evidence tending to prove that the defendant set
up or kept such gaming table at the time and place
as charged in the first count of the information?

It was shown that the witness Walker, who was in
charge of one of the tables at the time of the raid, had

known the defendant Cannon some years before in the State of Kansas, and that the defendant had employed and paid Walker to take charge of the tables and had furnished him money when it was needed to use in the game; that appellant's codefendant, Potts, who was much in evidence around the gambling room and saloon, had furnished money to appellant to be used when needed in keeping up the games; that the defendant, a few days before the date of the offense charged, had painted the room and made other repairs. In addition to the foregoing, it was in evidence that the defendant was seen around the poker tables in charge of the game, sometimes playing himself, and attending to the take-off which went to the house, or standing around and watching the games.

It must be admitted that the witness whose testimony identified the defendant and connected him directly with the setting up and keeping of the gambling tables as charged, was shown to be discredited, not only by his record and character, as disclosed by his own testimony, but because of his admission on the witness stand of his own guilt and therefore that he was an accomplice in the crime. This feature of the case, as made against the defendant, was given due recognition by the court and a proper instruction was given to the jury directing them that on account of the witness having been by his own admission an accomplice in the crime, his testimony should be received with great caution.

It is the peculiar province of the jury, and not of the court, to determine the weight to be given to the testimony of the witnesses, and as the testimony of Walker and the other witnesses for the State, if believed, warranted the finding of the jury, this court will not disturb the verdict. [State v. Richmond, 186 Mo. 71; State v. Smith, 190 Mo. 706; State v. Sassaman, 214 Mo. 695.]

There was substantial evidence tending to prove the guilt of the defendant, and, therefore, the court did not err in refusing to direct an acquittal, as requested by the defendant.

We have examined the record carefully and finding no prejudicial error therein, the judgment should be affirmed, and it is so ordered.

*Ferriss* and *Brown, JJ.,* concur.