# THE STATE v. CARLOS FIELDS, Appellant.

### Division Two, May 23, 1911.

1. **JUROR: General Challenge.** A challenge of a juror,"We challenge the juror for cause," is not sufficient. The specific ground of the challenge must be stated.

2. **——: Challenge Not Assigned in Motion.** Where no objection to the qualification of jurors is preserved in the motion for a new trial, the question of their qualification is not for review on appeal.

3. **CONSPIRACY: Evidence: Direct Proof.** The law does not require direct and positive evidence of the existence of a conspiracy or common purpose between the defendants and the alleged co-conspirator to commit the crime charged, and which was actually committed by said co-conspirator. It is sufficient if the conspiracy can be inferred from the facts and circumstances in evidence.

4. **——: ——: Order of Proof.** And the order of proof of a conspiracy must be left largely to the discretion of the trial judge. Testimony of the acts and declarations of the co-conspirator it not incompetent as against defendant because, at the time it is offered, a sufficient foundation showing defendant's connection with the conspiracy has not been laid.

5. **——: ——: Sufficient Proof.** Defendant and his brother Ray were jointly charged with murder, and a severance was granted. "Watch" services were held at the various negro churches of the town in the first part of the night of December 31st. On that evening defendant, who was a porter in a saloon, asked permission to take a revolver from the saloon, but was refused. Later he and two others went to the "watch party" at the Baptist church, where Ray arrived about the same time. Ill-will existed between Ray and deceased because they were rival suitors of a colored girl. Defendant asked one of the men who had accompanied him to the Baptist church to go with him and Ray to the Methodist church, a block away, remarking, "Hell's going on there." Shortly before that deceased had gone to the Methodist church, with the girl; and on the way there, defendant and Ray were heard to mention the name of the girl, and to say that deceased was "sore" at Ray on her account. They went into the Methodist church together, Ray going down the aisle towards deceased, and defendant going down the aisle on the opposite side towards the stove, and remarking to a small boy to "get up and go home; there's going to be some shooting take place

directly." He was then seen "edging" his way along the wall towards the door, with a pistol in his hand, and his eyes upon deceased, who was standing a few feet away at a refreshment stand. A woman exclaimed defendant had a gun, and almost immediately Ray shot deceased, killing him instantly. Deceased had made no demonstration of hostility to either brother. They left the building, and in a short time defendant returned, walked to where the corpse lay, flourished a revolver, and with oaths dared the bystanders to say anything about what he had done. He then went out and hid the revolver, and the next day, by written order, directed a witness to get it and return it to the saloon, and say nothing about it. It was the same revolver he had been refused the evening before. *Held*, these facts and circumstances tended to prove the conspiracy, and furnished a sufficient basis for the introduction of evidence in the separate trial of defendant, of what was said and done by Ray prior to the homicide.

6. ———: **Instruction.** And this evidence authorized an instruction on the theory that defendant aided, incited or abetted Ray in killing deceased.

7. ———: **Murder in Second Degree: Demurrer.** And it authorized a verdict finding defendant guilty of murder in the second degree, and the court did not err in refusing his demurrer to the evidence.

8. ———: **Evidence Showing First Degree Murder: Conviction of Murder in Second Degree.** Where there is evidence tending to prove murder in the first degree, an instruction authorizing a verdict for murder in the second degree is not error, even though defendant is convicted of murder in the second degree, and as a co-conspirator of the man who fired the fatal shot.

9. **REMARKS OF COUNSEL: Defendant as Witness.** In his closing argument to the jury the prosecuting attorney said: "The State has proved certain facts; has brought a large number of witnesses before you whose testimony has not been controverted by the defendant's witnesses." *Held*, that these words are not open to the construction that they were a comment on the failure of the defendant to testify, but were within the bounds of legitimate argument.

10. ———: ———: **Remarks of Court.** And where the counsel for the defendant objected to these remarks, "for the reason the defendant is not obliged to take the stand," an admonition, thereupon, by the court to the prosecuting attorney that he had no right to comment on the fact that the defendant did not take the stand, was a reference to the fact that defendant had not testified, but did not constitute error, and if it did it was committed at the instance of defendant, and therefore not reversible error.

11. **WEIGHT OF EVIDENCE:** For Jury.  When the testimony tends to prove the offense charged, it is the province of the jury, and not of the court to pass upon its probative weight.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Ward & Collins* for appellant.

(1) Some cases go to the extent of holding that it is permissible for the State to prove declarations and acts of one of the parties made and done in the absence of others, before proving the conspiracy, but the conspiracy must be afterwards proved and the declarations and acts of the co-conspirator must be about and concerning the offense for which defendant is being tried. State v. Ross, 29 Mo. 32; State v. Nell, 79 Mo. App. 243; State v. Walker, 98 Mo. 95; State v. Flanders, 118 Mo. 227; State v. Duncan, 64 Mo. 262. But it is far better practice (as recently held by this court) that, in order that the acts and declarations of one conspirator may be admissible in evidence against his co-conspirator, it first be made to appear that a conspiracy existed and that such acts and declarations were in furtherance of the common design. State v. Daubert, 42 Mo. 239; State v. Ross, 29 Mo. 32; State v. Duncan, 64 Mo. 262; State v. Walker, 98 Mo. 95; State v. Boatright, 182 Mo. 32; State v. Roberts, 201 Mo. 727. Over the objections of defendant, the court permitted the State to prove what defendant's co-indictee, Ray Fields, said about a negro woman by the name of Corrine Branham, and this was the only statement proved by the State spoken by the said Ray Fields before the killing. This statement or declaration of Ray Fields, not being about the crime, was wholly inadmissible against the defendant. State v. Ross, 29 Mo. 32; State v. Nell, 79 M. App. 243; State v. Walker,

98 Mo. 95; State v. Duncan, 64 Mo. 262; State v. Flanders, 118 Mo. 226; State v. Kennedy, 177 Mo. 98. The statements and declarations of Ray Fields made by him after the killing, and not even in the presence of defendant, were wholly inadmissible. State v. Reed, 85 Mo. 145; State v. Ross, 29 Mo. 32; State v. Duncan, 64 Mo. 262; State v. Barham, 82 Mo. 67; State v. McGraw, 87 Mo. 161; State v. Beaucleigh, 92 Mo. 490; State v. Hickman, 75 Mo. 416; State v. Melrose, 98 Mo. 594; State v. Hilderbrand, 105 Mo. 318; State v. Minton, 116 Mo. 605; State v. Harris, 150 Mo. 56; State v. Greeman, 164 Mo. 487; State v. Kennedy, 177 Mo. 98. It will not do to say that any of the testimony in this case, concerning the statement and acts of Ray Fields made after the commission of the homicidal act, although not admissible, were immaterial and did not injure the defendant, because if there was any evidence at all against the defendant, such statements did not injure him. The State was permitted to prove over the objections and exceptions of the defendant, that Ray Fields after the shooting, ran out the north door of the house. This testimony of course, concerning the act of the defendant's brother, was by the jury charged up to the defendant, and under the rulings of the trial court, really amounted to fright and confession of guilt on the part of defendant, since all the testimony against defendant was the acts and doing of defendant's brother. Again, over the objections and exceptions of the defendant, a State's witness was permitted to testify that after Ray Fields, defendant's brother and co-indictee, shot Sam Edmondson, he ran to the door and said, "Let me out." This testimony of course was charged up by the jury to the defendant. State v. Jaeger, 66 Mo. 180.

*Elliott W. Major,* Attorney-General and *James T. Blair,* Assistant Attorney-General, for the State.

(1) Everything done and said by the parties during the time of the existence of the conspiracy is competent whether said in the presence of the other party or not. State v. Darling, 199 Mo. 201; State v. Copeman, 186 Mo. 120; State v. Roberts, 201 Mo. 728. (2) It was not necessary to prove the conspiracy before offering the declarations. State v. Miller, 191 Mo. 608; State v. Walker, 98 Mo. 104; State v. Flanders 118 Mo. 235. (3) Nor was it necessary to prove the conspiracy by showing an express agreement between Ray Fields and appellant to kill Edmonson. It may even be "deduced from the attending circumstances connected with the transaction." State v. Walker, 98 Mo. 104; State v. Darling, 199 Mo. 199; State v. Flanders, 118 Mo. 235. (4) The proof of conspiracy in this case while mainly circumstantial, was full and complete when measured by the standard set by the law in this State. State v. Sykes, 191 Mo. 84; State v. Miller, 191 Mo. 611; State v. Darling, 199 Mo. 199; State v. Walker, 98 Mo. 104. (5) The evidence that Ray Fields, immediately after shooting deceased, ran out of the church in which the killing occured, was competent. Musser v. State, 157 Ind. 453; State v. Sykes, 191 Mo. 79. This, the record shows, occurred in the presence of defendant. It was clearly admissible. Further the objection was not that the conspiracy had ended, but was based merely on an assumption that no conspiracy had been proved. This ground cannot now be amplified. State v. West, 95 Mo. 149. (6) The exclamation of Ray Fields immediately after he had, in appellant's presence, shot deceased, was competent. The appellant was still standing in the room with drawn weapon in his hand. This was part of the *res gestae.* State v. Forshee, 199 Mo. 145; State v. Flanders, 118 Mo. 236. (7) As to Ray Fields's remarks

concerning Corinne Branham, they were made during a conversation between him and appellant. There was no objection made to them as testified to by the witness Nelson. Appellant's counsel cross-examined Nelson on the subject. State v. Forshee, 199 Mo. 145. The statement of Ray Fields to Josie Harkey concerning this same woman, made apparently "just before the shooting" and seemingly after his conversation with appellant about the woman, was competent as indicative of the motive which inspired the conspiracy proved to have been in existence at the time. State v. Darling, 199 Mo. 201; State v. Miller, 191 Mo. 608; State v. Forshee, 199 Mo. 145.

KENNISH, P. J.—On January 14th, 1909, an information was filed in the office of the clerk of the circuit court of Pemiscot county, charging appellant Carlos Fields, and his brother, Ray Fields, jointly, with the crime of murder in the first degree, for having killed one Sam Edmonson. A severance having been granted to appellant, he was tried, convicted of murder in the second degree, and his punishment assessed at imprisonment in the penitentiary for thirty-five years. He appealed to this court.

The evidence for the State tended to show the following facts:

Ray Fields and Carlos Fields are negroes, as was also the deceased. On the evening of December 31, 1908, a "watch party" was held at negro churches in Caruthersville, one known as the Baptist church and the other as the African Methodist church. On the evening of the homicide the defendant, Carlos Fields, who was a porter in a saloon, asked permission to take a revolver from the saloon, but was refused permission to take it. Later in the evening he and two others went to the "watch party" at the Baptist church. Ray Fields arrived at the Baptist church about the same time. A few minutes later the defendant asked one of

the men who accompanied him to the church to go with them, Ray and Carlos Fields, to the Methodist church, remarking, "Hell's going on there." The witness declined to go, and defendant, Ray Fields and another man started to the Methodist church. On the way there was some conversation about a girl named Corrine Branham and about Sam Edmonson, the deceased, being "sore" at Ray Fields on account of Corrine. The three entered the church at about the same time as the deceased. Defendant walked down to the stove and remarked to a small boy that he had better get out of the house as there was going to be trouble there. After making this remark, he was seen "edging" his way along the wall toward the door with a revolver in his hand, and his eyes upon the deceased, who was standing a few feet away at a refreshment booth. A woman who saw the revolver called attention to defendant and exclaimed that he had a gun. At almost the same instant Ray Fields shot the deceased, instantly killing him. The deceased had made no demonstration of hostility to either of the brothers. The two left the building and in a short time the defendant returned, walked to where the dead man lay and brandishing a revolver, inquired with oaths, "Who don't like it?" "What's the matter with you?" "Who has anything to do with it?". The defendant then left the church again. Early the next morning he told one of the witnesses where he had thrown the revolver, asked him to go and find it, return it to the saloon and say nothing about it. The witness found the revolver and upon a written order from the defendant delivered it to the bartender at the saloon where the defendant was employed. The revolver had been left at the saloon as a pledge for a debt and was the same revolver the defendant had asked the bartender for the night of the homicide when he was told he could not have it.

The defendant did not go upon the stand and but one witness testified in his behalf. Portions of the

testimony given at the preliminary examination before the justice of the peace, tending to contradict the testimony given at the trial by the State's witnesses, were introduced and read in evidence by the defendant.

I.     Error is assigned to the action of the court in overruling the defendant's challenge to jurors Little, Stevens and Ellison on their *voir dire* examination.

The record fails to show that either of these jurors was not qualified to serve, and in addition it is disclosed that as to jurors Stevens and Ellison no objection to their qualification is preserved in the motion for a new trial.     For that reason the question is not now before the court for review.     As to juror Little the defendant's challenge was as follows:     "We challenge the jurors for cause."     It has been decided by this court that a general challenge for cause, such as made to juror Little, is not sufficient.     The specific ground of the challenge must be stated in order that the trial court may have its attention called to the reason for which it is asked to disqualify the juror. [State v. Bobbitt, 215 Mo. 10; State v. Taylor, 134 Mo. 109; State v. Meyers, 198 Mo. 225.]

II.     Many objections were interposed by the defendant to the testimony of the witnesses for the State and exceptions were duly saved to the adverse rulings of the court thereon.     The testimony thus objected to was largely as to evidence which was clearly admissible or so unimportant in its character that its admission could not be held prejudicial.     We cannot discuss the ruling of the court as to each of these numerous objections, but we have examined them and are satisfied that the defendant had no substantial ground of complaint.

The objection most strenuously made by the defendant and insisted upon throughout the introduction of the testimony for the State was that no proper foundation had been laid, showing the existence of a

conspiracy between the defendant and Ray Fields to commit the offence charged, so as to render admissible in evidence against defendant the acts and declarations of Ray Fields who shot and killed the deceased.

It is a principle of law in criminal procedure that the order of proof of a conspiracy, with reference to the introduction in evidence of the acts and declarations of the alleged co-conspirator, must be left largely to the discretion of the trial judge. [State v. Miller, 191 Mo. 587; State v. Walker, 98 Mo. 95; State v. Daubert, 42 Mo. 239; State v. Ross, 29 Mo. 32.]

To entitle the State to introduce in evidence against the person on trial the acts and declarations of another relative to the offence charged, it is essential that the existence of a conspiracy or common purpose between the defendant and the alleged co-conspirator to commit the crime charged be shown, but the law does not require direct and positive evidence of such conspiracy. It is sufficient if it may be inferred from the facts and circumstances in evidence. [State v. Roberts, 201 Mo. 702; State v. Darling, 199 Mo. 168; State v. Sykes, 191 Mo. 62.]

To establish the existence of a conspiracy in this case it was shown by the State that the defendant made an effort to borrow a revolver on the evening of the homicide. Although his request was denied he evidently took the revolver without permission, as he had it on his person at the time the deceased was shot. Ill-will existed between the deceased and the defendant's brother because of their being rival suitors of Corrine Branham, a colored girl. Shortly before the homicide the deceased had left one of the two churches where the colored people of that town were assembled to watch the old year out and the new year in, in the company of this girl, but shortly thereafter returned to the church. The churches were about a block

apart.     The defendant and his brother were at the Baptist church and the defendant asked another colored man to go to the Methodist church with them, saying that "hell's going on there." On the way to the Methodist church the defendant and his brother were heard to mention the name of the colored girl, Corrine Branham. They went into the Methodist church together, Ray Fields going toward deceased and the defendant going down the aisle on the opposite side of the church. The defendant said to a negro boy who was in the church: "Get up and go home; there's going to be some shooting take place directly." The defendant was seen with a pistol in his hand moving along the wall toward the door and looking in the direction where his brother and the deceased were standing when his brother fired the fatal shot. Immediately after the shooting the defendant went out with his brother, but soon returned and going up to the corpse flourished the revolver, and dared the by-standers to say anything about what had been done. He then went out and hid or threw away the revolver, which was afterwards found and returned to the owner under the defendant's directions.

In our opinion these facts and circumstances tended to prove the conspiracy and furnish a sufficient basis for the introduction in evidence against the defendant of what was said and done by Ray Fields leading up to the homicide.

III.     Complaint is made of the instructions because (1) the evidence did not warrant an instruction on murder in the second degree, and (2) there was no evidence authorizing an instruction on the theory that the defendant aided, incited or abetted Ray Fields in killing the deceased.

There was clearly evidence tending to prove murder in the first degree and we need not stop to inquire whether it also tended to prove murder in the second

degree, for it is provided by section 4903, Revised Statutes 1909, that "any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide." And it is provided by section 5115 that no judgment shall be affected "because the evidence shows or tends to show him to be guilty of a higher degree of the offence than that of which he is convicted." [State v. Todd, 194 Mo. 377.]

The complaint that error was committed by the court in the giving of an instruction authorizing the jury to find the existence of a conspiracy between Ray Fields and the defendant, in pursuance of which the homicide was committed, has been sufficiently covered by what has been said as to the admissibility of the testimony offered by the State upon that theory of the case.

IV.   In the closing argument to the jury the prosecuting attorney said: "The State has proved certain facts; has brought a large number of witnesses before you whose testimony has not been controverted by the defendant's witnesses." This language was objected to by counsel for defendant, "for the reason that the defendant is not obliged to take the stand." The court thereupon admonished the prosecuting attorney that he had no right to comment on the fact that the defendant did not take the stand. The defendant's counsel then excepted to the remark of the court. It is now contended by appellant that prejudicial error was committed in the remarks both of the prosecuting attorney and of the court.

As to the alleged improper remarks of the prosecuting attorney we are of the opinion that the language was not open to the construction that it was a comment on the failure of the defendant to testify. The

234 Sup.—40

words "the defendant's witnesses" are not fairly susceptible of such an interpretation, nor is there anything in the record to indicate that they were so intended . We hold that the prosecuting attorney was within the bonds of legitimate argument and that his conduct was not open to the objection made or deserving of admonition from the court.

. The court did refer to the fact that the defendant did not take the stand as a witness, but it was after counsel for the defendant had first referred to the same fact and was for the purpose of correcting the alleged error to which counsel had called the court's attention. Under the circumstances the remark of the court did not constitute error, but even if it did it was "error committed at the instance of the defendant" and therefore not reversible error. Sec. 5115, R. S. 1909. The facts of this case, upon the point now considered, are readily distingushed from those of the case of State v. Snyder, 182 Mo. 462.

V. It is finally insisted that the court erred in refusing defendant's instruction in the nature of a demurrer to the evidence.

The facts and circumstances upon which the State relied as justifying the submission of the case to the jury and as sufficient to sustain the verdict have been detailed elsewhere in this opinion and we shall not repeat them at length here. The facts that the defendant procured a deadly weapon before going to a church service; that he was with his brother and talking about the ill-will between his brother and the deceased immediately before the homicide; that he went into the church with his brother and held his pistol in his hand and was looking toward his brother and his victim when the fatal shot was fired; that he went out with his brother after the homicide and returned, threatening any person who sympathized with the murdered man; that he showed his consciousness of guilt by

hiding the weapon, all tended to prove that the defendant was aiding, advising and abetting his brother in the commission of the murder of which he was convicted.

It is well settled that when the testimony tends to prove the offense charged, it is the province of the jury and not of the court to pass upon its weight. [State v. Sharp, 233 Mo. 269; State v. Cannon, 232 Mo. 205; State v. Sassaman, 214 Mo. 695; State v. Fogg, 206 Mo. 696; State v. Tetrick, 199 Mo. 100.

The murder was unprovoked and without any mitigating circumstances and there is nothing in the record to sustain the complaint that the punishment was excessive or that the verdict was the result of passion and prejudice.

Finding no prejudicial error in the record the judgment is affirmed.

*Ferriss* and *Brown, JJ.,* concur.