**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Clyde SMITH, Defendant-Appellant.**

**No. 12121.**

Missouri Court of Appeals,
Southern District,
Division One.

March 8, 1982.

John D. Ashcroft, Atty. Gen., Douglas Lind, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Kerry D. Douglas, Douglas, Douglas & Lynch, P. C., Bolivar, for defendant-appellant.

GREENE, Presiding Judge.

Defendant Clyde Smith and co-defendant Charles Friend were charged in a two-count felony information, filed in the Circuit Court of Greene County, Missouri, with the crimes of attempted murder of Jerry Har-

gis (§ 564.011)[1] or, in the alternative, conspiracy with the purpose of promoting and facilitating the murder of Jerry Hargis (§ 564.016). Charles Friend entered a plea of guilty to the conspiracy charge and was sentenced by the trial court to 15 years' imprisonment. The state dismissed the attempted murder charge against Friend.

The state proceeded to trial against defendant Smith. Prior to trial, defendant filed a motion to quash the information in which he alleged that due to the fact he had already been tried and convicted in the United States District Court for the Western District of Missouri, under 18 U.S.C. § 1503, of the crime of obstructing justice, which charge is a similar offense based on substantially the same facts as the state charge, he was being placed in double jeopardy by these proceedings. The motion was overruled.

Smith also filed a motion in limine to exclude certain specified testimony on the grounds that it would imply his involvement in criminal activity other than that with which he was charged. The trial court excluded some of the testimony objected to, but overruled the motion as to other specified testimony. After commencement of the trial, but before evidence was introduced, defendant moved to require the state to elect, so that the trial would proceed on a single count. The motion was overruled.

Evidence was then heard, after which the trial court instructed the jury that they could find the defendant either not guilty of both crimes charged, or guilty of one of the two crimes charged, but not guilty of both. The jury found Smith guilty of conspiracy to commit murder and recommended 7 years' imprisonment. After Smith's timely motion for new trial was overruled, the trial court sentenced him to 7 years' imprisonment in accordance with the jury verdict. This appeal followed. We affirm.

In order to understand the points relied on in this appeal, a brief outline of the facts is necessary. In late 1979 and early 1980, Clyde Smith, Charles Friend, Frankie Dean Cooper, Jerry Hargis, and others were members of a cattle rustling ring in southwest Missouri. They stole cattle in several counties including Greene, Dade, and Lawrence, and sold them in various locations, including the state of Kansas. In early 1980, law enforcement officers received information concerning the identity of some of the thieves, including Cooper, and filed felony charges against them. The ring members, having deduced that one of their members was furnishing information concerning the cattle rustling operation to the police, met to try and determine the identity of the informer.

Smith and Charles Friend were at the meeting. The group first thought Cooper was the informant, but later determined that Jerry Hargis was the person who was talking to the police. Friend then told Cooper, the actual informant, that Smith and Friend's "money man" would each put up $2,500 to have Ms. Hargis killed to prevent her from testifying before a federal grand jury that was investigating the matter. Cooper told Friend that he knew of two men from St. Louis who would do the job for $4,000 ($2,000 down and $2,000 after the murder), and he would contact them. Instead of contacting the "two hit men from St. Louis", who were fictitious, Cooper contacted the police. A plan was developed whereby two law enforcement officers, Special Federal Agent Robert Stumpenhaus and Police Officer Chester Waterhouse, posing as "hit men", would meet with Friend to supposedly arrange for the murder of Jerry Hargis.

The meeting took place. Friend gave the officers $2,000 in cash which he had received from Smith. Smith knew what the money was for and approved of the murder. Friend then showed the officers where Ms. Hargis lived and told the "hit men" where to contact him after the job was done. Friend agreed with the officers, after talking to Smith, that photographs of Jerry Hargis, taken after her murder, would suf-

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

fice as proof of the killing. The two officers then staged the killing of Jerry Hargis, who was cooperating with them. They took her to a park in Everton, Missouri, had her lie down, covered her face with human blood so it would look like she had a head wound, had her pose as if she were dead, and photographed her. The officers then contacted Friend and set up a meeting to show him the pictures of Hargis and to collect the balance of $2,000 owed them for the job.

Friend and Smith met the officers and viewed the pictures of Jerry Hargis. Smith said she "looked dead", whereupon Friend paid the officers the balance of $2,000, which he had received from Smith. Friend and Smith were then charged with conspiracy to murder and attempted murder of Jerry Hargis. Cooper, Friend and Jerry Hargis all testified as witnesses for the state.

Defendant's first point relied on is that the trial court erred in overruling his motion to compel the state to elect between Count I (attempted murder) and Count II (conspiracy to commit murder) of the information prior to the introduction of the evidence. He argues that the trial court a) failed to exercise its discretion on the election question, even though required to do so by law, or b) abused its discretion by not requiring election, for the reason that prejudicial hearsay testimony, admissible on the conspiracy charge, would not have been admissible on the attempted murder charge.

In the dialogue prior to the trial court's ruling on the motion to elect, defense counsel, in support of the motion, argued that it would be difficult to determine which count the prosecuting attorney was proceeding on as the evidence was presented, and that evidence on one count (hearsay evidence on the conspiracy) would not be admissible on the other count (attempted murder). In response, the prosecuting attorney stated that the state could go to trial on the alternative counts, as long as the jury was clearly instructed that they could only return a guilty verdict on one count, citing *State v. Milentz*, 547 S.W.2d 164 (Mo.App.1977) as

authority for his position. The trial court agreed with the prosecuting attorney and stated, "Well, I think the Missouri law is clear in this. I think the case goes right down the line on it." From this, defendant concludes that the trial court failed to exercise its discretion in ruling on the motion, by thinking that it was required by law to let the state proceed on both counts.

Although defendant devotes 23 pages of his excellent brief to this premise, his conclusion is unfounded. Rule 23.05 provides that "[a]ll offenses that are based on the same act or on two or more acts that are part of the same transaction or on two or more acts or transactions that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts." The two crimes charged here were conspiracy to commit murder and attempted murder. They arose from the same transaction and were part of a common scheme or plan, which was to kill Jerry Hargis so that she would not be able to testify against Friend and Smith before a federal grand jury. The crimes were charged in the alternative. In such cases, the effect of the allegations is that the defendant committed either one or the other of the offenses; therefore, the jury may find the defendant not guilty of both charges, or guilty of one charge, but not guilty of both. MAI–CR2d 2.71 and MAI–CR2d 2.70, Notes on Use 2.

■ In its response during the dialogue with counsel, the court was merely stating what the law is, and that the observations along this line in *State v. Milentz*, supra, at p. 167, were correct. While the trial court should exercise sound discretion in ruling on a motion to elect, keeping in mind that evidence on one count might not be admissible on another count, and conceivably could prejudice defendant, there is nothing in the record to conclusively indicate that the trial court did not exercise its discretion in ruling on the motion to elect.

■ On this same point, defendant contends that if we should find, as we have, that the trial court exercised its discretion in ruling on the motion, that we find it

abused that discretion by not requiring a pre-trial election, because hearsay testimony of a prejudicial nature was received in evidence on the conspiracy count which would not have been admissible on the attempted murder count. We might be inclined to agree with defendant's contention if the jury had returned a verdict of guilty of attempted murder. In that case, they would have heard substantial prejudicial hearsay evidence in support of the conspiracy charge, which would not have been admissible on the attempted murder charge. Such is not the case here. Defendant was convicted of conspiracy. In cases where election between counts is involved, a defendant cannot complain of error which did not prejudice him. *State v. Cannon*, 232 Mo. 205, 134 S.W. 513, 515 (1911). The claim of error is that the prejudicial evidence in question could have tainted an attempted murder conviction. Due to the fact defendant was not convicted of attempted murder, he was not prejudiced. The point is denied.

Defendant's second point relied on is that the trial court erred in 1) overruling his motion in limine which sought to prohibit the state from introducing evidence, through the testimony of Jerry Hargis, that defendant was involved in criminal activity other than that charged in the information; i.e., cattle stealing; and, 2) overruling objections to the testimony of Frankie Dean Cooper, Jerry Hargis and Charles Friend to the effect that defendant was involved in criminal activity other than that for which he was charged, such as cattle stealing, conspiracy to murder persons other than Jerry Hargis, tampering with witnesses other than Jerry Hargis, and obstruction of justice. He urges that such evidence was inadmissible, and, even if some of it was admissible to show that defendant was a member of a cattle rustling ring and that Jerry Hargis knew facts that could implicate defendant in such criminal activity, such fact was no justification for the repeated presentation of such evidence, without regard to whether Jerry Hargis had knowledge of such criminal activity.

The state sought to justify evidence of other crimes on the motive theory, as shown by the statement of the prosecuting attorney made to the trial court during the hearing on the motion in limine when he said, "[i]t will show that this—it's because of her knowledge as to these other illegal activities. That is why this defendant would contract to get her killed." Evidence of other crimes, unrelated to that for which defendant is presently standing trial, violates defendant's right to be tried only for the offense with which he is charged in the present case and is error. *State v. Wright*, 582 S.W.2d 275, 277 (Mo. banc 1979). The rule in *Wright*, supra, however, is not absolute. *State v. Barnett*, 611 S.W.2d 339, 341 (Mo.App.1980).

█ Evidence regarding commission of separate and distinct crimes is admissible if it has "some legitimate tendency" to directly establish defendant's guilt of the charge for which he is standing trial. *State v. O'Neal*, 618 S.W.2d 31, 34 (Mo.1981). The "some legitimate tendency requirement" is satisfied if the evidence of other crimes tends to establish 1) motive, 2) intent, 3) the absence of mistake or accident, 4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or, 5) the identity of the person charged with the offense on trial. *State v. Wing*, 455 S.W.2d 457, 464 (Mo. 1970). The admission of such evidence is subject to rigid scrutiny as its admission has a tendency to create a legally spurious presumption of guilt, and it has the potential of raising the improper reference that, because the defendant committed other crimes, he must have committed the crime charged. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954); *State v. Hancock*, 451 S.W.2d 6, 9 (Mo.1970).

█ The trial court must balance the actual need for such evidence against the degree to which its admission may prejudice the jury. This is a judicial question, the determination of which lies within the sound discretion of the trial court. The exercise of that discretion should not be

overturned unless there is a clear showing that the trial court abused such discretion. *State v. Barnett,* supra, at p. 341. We have examined the questioned evidence with the foregoing principles in mind.

In his brief, defendant lists 25 instances in which he says that witnesses linked defendant with crimes other than the ones for which he was on trial. The alleged criminal activities charged to defendant, and the sources of the testimony, are listed in the following table:

### CATTLE RUSTLING (STEALING), OR, CONSPIRACY TO STEAL CATTLE

| WITNESS | TESTIMONY |
|---|---|
| 1. Jerry Hargis | She was involved in cattle rustling activities with Clyde Smith, Charles Friend and others. |
| 2. Jerry Hargis | She and Clyde Smith stole cattle in Dade County, Missouri. |
| 3. Jerry Hargis | On several occasions, she went with Clyde Smith to find cattle, and to see whether they could pick them up with a truck. |
| 4. Jerry Hargis | She discussed the cattle rustling operation with Clyde Smith, Charles Friend and his wife, Teresa. |
| 5. Frankie Cooper | He was involved in a cattle stealing ring with Clyde Smith and others. |
| 6. Charles Friend | He was involved in cattle rustling ring with Smith, Cooper and others. |

### CONSPIRACY TO COMMIT MURDER, OR ATTEMPTED MURDER OF INFORMANT, OR INFORMANTS

| | |
|---|---|
| 7. Jerry Hargis | Smith told her he would never go to jail. |
| 8. Jerry Hargis | Smith and Friend knew that some member of the cattle rustling gang was a police informant. |
| 9. Charles Friend | Cattle rustling operations in which Smith was involved was being hurt by disclosures of an informant, and meeting was set up to determine who was talking. |
| 10. Charles Friend | Smith intended to murder Darrell Rhoden and Lonnie Hargis as they were involved in the cattle rustling ring and had turned a "fur deal setup" he and Smith were involved in "in on us before we could do it." |
| 11. Charles Friend | Told "hit men" that Jerry Hargis needed to be killed because "she was testifying at Kansas City on us in a cattle rustling ring, and she would get us charged up there and sent to the penitentiary if we didn't get something done with her." |
| 12. Charles Friend | Smith told him that he had to get something done with Jerry Hargis before March 10th, as she was to testify before a federal grand jury on that date. |

### CONSPIRACY TO COMMIT MURDER, OR ATTEMPTED MURDER OF INFORMANT, OR INFORMANTS

| | |
|---|---|
| 13. Police Officer Chester Waterhouse (posing as a "hit man".) | Friend told him that Jerry Hargis needed to be killed, as she was going to testify before a federal grand jury and would give testimony damaging to Friend and others concerning their involvement in a cattle theft ring. |

### OBSTRUCTION OF JUSTICE AND TAMPERING WITH WITNESSES

| | |
|---|---|
| 14. Frankie Cooper | Smith was involved in a plan to get Cooper to go to Canada so that he would not have to testify before a federal grand jury. |
| 15. Charles Friend | Smith gave Cooper $200 to go to Canada so that Cooper could avoid testifying before the federal grand jury. |

### MISCELLANEOUS, OR UNSPECIFIED CRIMINAL ACTIVITY

| | |
|---|---|
| 16. Frankie Cooper | At a meeting in a Joplin, Missouri hotel room, Charles Friend, Clyde Smith, Danny Richter and Bennie Friend "proceeded to talk about things that I knew. The things that the law had found out that they had done, I had no way of knowing, and when I left there, they had figured it was Jerry Hargis that was doing the talking. |

### QUESTIONS OF PROSECUTING ATTORNEY DIRECTED TO VARIOUS DEFENSE WITNESSES DURING CROSS-EXAMINATION

| | |
|---|---|
| 17. Roy Freeman | He was asked if he had ever talked to Smith about a stolen bulldozer. Freeman denied that he had done so. (Not objected to.) |
| 18. Roy Freeman | He was asked if he knew Smith, Friend, and others were involved in stealing cattle. Freeman said he did not know. (Not objected to.) |
| 19. Roy Freeman | Freeman was asked if he and Clyde Smith had given Cooper money to go to Canada to avoid testifying before the grand jury. Freeman denied it. (Not objected to.) |
| 20. Lillian Webster | She was asked if she overheard a conversation between Cooper, Charles Friend and Freeman regarding Cooper going to Canada to avoid testifying. She answered that she had not. (Not objected to.) |
| 21. Bennie Friend | He was asked if he and Clyde Smith had stolen a trailer in Greene County. The witness denied it. (Objected to.) |
| 22. Bennie Friend | He was asked if he had told his brother (Charles Friend), or Dean Cooper, that Clyde Smith was paying Jerry Hargis $300 per week to keep her mouth shut. He denied making such statement. (Not objected to.) |
| 23. Clyde Smith | Defendant was asked if he was one of the persons who had stolen 50–60 head of cattle from the Union Stockyards. Smith denied it. (No objection.) |

| | |
|---|---|
| 24. Clyde Smith | Defendant was asked if he had discussed "additional hits" with Federal Agent Stumpenhaus (posing as hit man). Smith denied it. (No objection.) |
| 25. Clyde Smith | Defendant was asked if he was charged with cattle theft in Dade County. Smith admitted that he was. On direct examination, Smith said he and Jerry Hargis were charged with stealing cattle in Dade County. |

All of the testimony listed in examples 1 through 6 above concerns the involvement of defendant in cattle rustling. The testimony contained in examples 7 through 16 concerns the efforts of Smith and his co-conspirator, Charles Friend, to determine which member of their cattle rustling ring was informing the police as to their criminal activities, and the efforts of Smith and Friend to prevent witnesses from testifying against them concerning their cattle stealing activities, either by murdering the prospective witnesses, or by persuading the witness to leave the country.

█ The inter-connection between the defendant, Charles Friend, and others stealing cattle, and the efforts of Smith and Friend to avoid prosecution for their crimes by conspiring to dispose of witnesses against them, is obvious. The crimes in question were so "inseparably connected" that proof of one necessarily involves proving the other. See, *State v. Lue*, 598 S.W.2d 133, 137 (Mo. banc 1980) and *State v. Knighton*, 518 S.W.2d 674, 679 (Mo.App. 1975).

The testimony in question on examples 1 through 16 was admissible as it was relevant and material as showing motive, intent, and a common scheme or plan to bring about the death of Jerry Hargis to prevent her from testifying before the federal grand jury.

As to examples 17 through 24, none of the prosecutor's questions to defense witnesses on cross-examination were objected to, with the exception of example 21, where Bennie Friend was asked if he and Clyde Smith had stolen a trailer in Greene County. None of the answers given, by any of the witnesses in examples 17 through 24, incriminated defendant in any way. In ex-

ample 25, defendant's counsel, on *direct* examination, asked his client if he had any felony convictions, and defendant replied that, in addition to a conviction for jumping bail, he was charged with stealing cattle in Dade County. On cross-examination, defendant was asked if that cattle theft occurred before the federal grand jury directed its attention to the cattle rustling ring. No objection was made to the prosecutor's question.

A further objection on appeal is to the questions raised in examples 1 through 25, and the forthcoming answers, on the ground that the testimony was prejudicial because it was cumulative and repetitious, endeavoring to portray defendant as a "bad man." Defendant admits, arguably, there was justification for the trial court permitting "limited proof" that defendant was involved in a cattle stealing ring and that Jerry Hargis could implicate Smith as one of the persons involved, but alleges there was no reason for the "repeated and blatant" presentation of such evidence. In other words, how much is too much?

█ No objection was made at trial to any of the listed questions or answers on the ground that they were cumulative or repetitive. Even if objections had been made on that basis, such objections would have been without merit. Evidence should not be rejected as cumulative where, as here, it goes to the very root of the matter in controversy. Also, the trial court's discretion to admit or reject cumulative evidence is not reviewable on appeal in absence of abuse. *Tryon v. Casey*, 416 S.W.2d 252, 259 (Mo.App.1967). No such abuse is shown here. The point is denied.

Defendant's third point is that the trial court erred in admitting into evidence, over objection, certain statements of witness Frankie Dean Cooper as to conversations Cooper had with co-conspirator Charles Friend. Defendant was not present during those conversations. Smith alleges that the conversations in question were hearsay, and were not admissible under the co-conspirator declarations exception, as the statements were made before there was any

evidence introduced that a conspiracy had been established, or else were made after the conspiracy had terminated.

The hearsay declarations under attack here are listed as follows:

(1) Charles Friend told Cooper there was a $5,000 contract on Jerry Hargis' head.

(2) Charles Friend told Cooper that his "money man" had put up $2,500 and that Smith had put up $2,500 to have Jerry Hargis killed, but that Smith had told Friend that he was going to do the job himself.

(3) Benny Friend had told Cooper that Smith was paying Jerry Hargis $300 a week to keep her quiet.

(4) Charles Friend told Cooper that Lonnie Hargis had informed Friend that if something was not done with Jerry Hargis, she was going to put them all in the penitentiary.

(5) Charles Friend told Cooper that he wanted to go to the home of Jerry Hargis and "blow her away."

(6) Charles Friend told Cooper that if someone was going to kill Jerry Hargis, it needed to be done by Saturday night.

(7) After Cooper told Friend that Cooper had a meeting set up with two "hit men" who would kill Jerry Hargis for $4,000, Friend advised Cooper that he would have to talk to his "money man" to make sure that it was all right to set up the meeting.

(8) Charles Friend told Cooper that Cooper should not appear before the federal grand jury, and Friend and Cooper tried to find Clyde Smith to get some money from Smith so that Cooper could go to Canada.

▪ The first seven conversations occurred before an agreement was reached with the "hit men" to kill Jerry Hargis. The eighth conversation was after the conspiracy had terminated. While it is desirable that independent evidence of the existence of a conspiracy be shown before the declarations of one co-conspirator, *State v.*

*Fields,* 234 Mo. 615, 138 S.W. 518, 520 (1911), the order of proof lies within the sound discretion of the trial court. *State v. Stogsdill,* 324 Mo. 105, 23 S.W.2d 22, 27–28 (1929).

▪ The first seven testimonials described events leading up to the agreement with the "hit men" to kill Jerry Hargis. Six of those were made by Charles Friend, a named conspirator. The other was made by Bennie Friend who, from the evidence, was a part of a conspiracy to keep witnesses from testifying against members of the cattle stealing ring. All of the evidence was relevant and material. No abuse of the trial court's discretion is shown by the order of proof, and defendant cites no case in his appeal brief where the order of proof in a conspiracy case constituted reversible error. As to the eighth testimonial, the fact that certain declarations are made after the crime itself has been consummated does not necessarily make them inadmissible. *State v. Hill,* 352 Mo. 895, 179 S.W.2d 712, 716 (1944). If a conspiracy continues for any purpose, such as the concealing of the crime or taking measures to prevent or defeat prosecution, the admissions of one co-conspirator are admissible against the other, even if made after the completion of the crime which had been the objective of the conspiring. *State v. Priesmeyer,* 327 Mo. 335, 37 S.W.2d 425, 427 (1931).

Although the specific objective of the conspiracy charge was the murder of Jerry Hargis, the overriding purpose was the avoidance of prosecution. The decision to give Cooper financial help so that he could go to Canada was an attempt to conceal the fact that Smith and Charles Friend had been involved in stealing cattle and, as such, was a continuation of the conspiracy to prevent witnesses from testifying. *State v. Newberry,* 605 S.W.2d 117, 125 (Mo.1980). The evidence was admissible. The point is denied.

Defendant's final point is that the trial court erred in overruling his motions to quash the information and for judgment of acquittal, for the reason that defendant's 7-year sentence in this case was multiple

punishment to a sentence imposed against him after his conviction of the crime of obstruction of justice in the United States District Court of the Western District of Missouri, because such sentence was contrary to the legislature policy of the state of Missouri, as expressed in § 564.016(7), which prohibits a defendant from being charged, convicted, or sentenced on the basis of the same course of conduct of both the actual commission of an offense and a conspiracy to commit that offense.

This issue was not raised at trial, or in defendant's motion for new trial and, therefore, has not been preserved for review here. Rule 29.11(d); *State v. Scott*, 515 S.W.2d 524, 527–528 (Mo.1974). Plain error review under Rule 29.12(b) is not justified, as the state and federal governments are separate sovereigns, each having the power to impose criminal sanctions for violations of their respective laws. See, *State v. Ivory*, 578 S.W.2d 62, 63–64 (Mo.App. 1978) and cases cited therein. Requiring defendant to stand trial in the state court on a charge of conspiracy to commit murder, after he had been convicted of obstruction of justice in federal court on the basis of similar evidence was not error, plain or otherwise. The point is denied.

The judgment and sentence of the trial court are affirmed.

All concur.