State v. Duncan.

---

# THE STATE v. E. A. DUNCAN, Appellant.

Division Two, November 14, 1911.

1. **INFORMATION: Charging Felony.** An information charging that defendant "in and upon the body of one John W. Jack, then and there being, feloniously, on purpose, and wilfully with a deadly weapon, to-wit, a pistol loaded with gunpowder and leaden balls, which the said " defendant "then and there held, did then and there make an assault, with the intent him the said John W. Jack then and there feloniously to kill," charges that the assault was committed with a felonious intent. It would have been sufficient without the last use of the word "feloniously."

2. **JURY: Sworn to Try the Case.** The record must show that the jury were sworn to try the case; but if it appears in the record that the jury were "duly impaneled and sworn," the presumption attaches that they were properly sworn. So that where the record recites that "this cause is proceeded with before the following jury, duly impaneled and sworn, to-wit," naming twelve jurors, and concluding with the words: "twelve good and lawful men summoned from the body of the county," the record shows that the jury was sworn to try the issues in the case between the State and the defendant.

3. **CONVICTION: Sufficiency of Evidence: Conflict.** It is the province of the jury to weigh the evidence and determine the facts; and if there is evidence tending to prove the facts as charged, the appellate court will not disturb the verdict. So that where there was evidence that defendant had previously threatened to kill Jack before sundown; that, as he went to the post office, from his own office, Jack was standing on the sidewalk; that, as he came out of the post office, he had his hand in his pocket; that he

walked up to Jack, drew a pistol from his pocket, and said, "Damn you," and that Jack with his left hand grabbed his pistol, and with the other drew his own pistol, and a scuffle ensued, it cannot be held that the evidence fails to show that defendant made an assault upon Jack, although defendant's evidence tends strongly to show that Jack was the aggressor.

4. **EVIDENCE: Explaining Possession of Pistol.** It is always competent for a defendant charged with using or attempting to use a deadly weapon, to show why he had the weapon in his possession at the time of the difficulty. But where defendant is charged with feloniously assaulting Jack with a pistol, it is not competent to permit him to show that, after the assault and after he was taken to jail, one Stephens with whom he had had a difficulty previously the same day, and who had followed him to the jail, drew a revolver upon him and threatened to kill him, since Stephens was not present at the assault upon Jack and was no party to it.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Dalton & Arthur* for appellant.

(1) The defendant is being prosecuted for a felonious assault. In such cases the gravamen of the offense is the assault. This class of assault is not a creation of the statute; it was a misdemeanor at common law. In order to sustain a conviction in such a case, it is necessary for it to be alleged in the information that the assault was committed with a felonious intent. The purpose of the prosecution is to convict the defendant of the assault and not for an attempt to kill and murder. (1) East P. C. 441; Wile v. State, 60 Miss. 260. In a prosecution for a felonious assault the information should be held bad, unless the word "felonious" is used to modify the word "intent." State v. Clayton, 100 Mo. 519; State v. Davis, 121 Mo. 404; State v. Norman, 136 Mo. 1. (2) The record does not show that the jury was sworn to try the issues in the case between the State and the defendant. Lewis v. State, 51 Ala. 1. (3) Duncan and Stephens

had some difficulty several hours before Jack made the attack on Duncan. It is shown by the evidence that Jack was aiding Stephens in annoying Duncan. While Duncan and Stephens were in the height of their gun display, Jack rushed in and took Duncan's pistol from him. In the controversy with Duncan, Jack was the aggressor. He caught hold of Duncan as he was on his way back to his office. Jack's own testimony shows that he caught hold of Duncan's gun in such a manner that he could not pull the trigger and yet while holding Duncan in this manner, Jack shot and wounded him. The only assault there is in this case is the one made by Jack upon Duncan. 3 Cyc. 1020 (a). In order to establish an assault on the part of the defendant the force must be physical. In the case at bar there was no force on the part of the defendant. The only physical force which was displayed in the altercation was that applied and used by the prosecuting witness. Bishop on Criminal Law (4 Ed.), sec. 49; State v. Pohl, 170 Mo. 422. The victim, who in his physical weakness was assaulted, shot, and severely wounded, should not be forced to suffer the penalty of the law for the crime the prosecuting witness committed upon the body of the defendant. Manahan v. State, 18 Ind. App. 297. (4) On the last page of the cross-examination of Jack, and last part of Duncan's testimony in chief, the defendant offered to show that Stephens followed the officials who had Duncan in custody to the city jail. After Duncan had been taken to the jail, Stephens entered the enclosure thereof and drew his pistol and pointed it at Duncan and told him that he would kill him. This is a part of the *res gestae*. It was only a few moments after the Jack-Duncan fuss till Stephens drew his pistol on Duncan. The real trouble had been between Stephens and Duncan, and Jack for some purpose just butted in. Klein v. Hoffheimer, 132 U. S. 367; Eagon v. Eagon, 60 Kan. 697.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

(1)   The information is valid, sufficient, in accordance with the provisions of the statutes, and is in a form often approved by this court.   State v. Henderson, 165 Mo. 262; State v. Chandler, 24 Mo. 371; State v. Temple, 194 Mo. 248; Kelley's Crim. Law, sec. 579, p. 381.   (2)   Appellant complains that the information is insufficient to sustain the judgment, in that it does not charge the felonious intent.   In this appellant is in error.   Under the long line of decisions of this court informations and indictments in conformity to this information have been approved by this court, and rightfully so.   State v. Comfort, 5 Mo. 357; State v. Chandler, 24 Mo. 371; State v. Seward, 42 Mo. 206; State v. Hendrickson, 165 Mo. 262; State v. Temple, 194 Mo. 249; State v. Heath, 221 Mo. 570; State v. Privet, 175 Mo. 123; State v. Kindred, 148 Mo. 270.   The appellant complains that there was no assault made by appellant.   This is a question of fact and was for the jury.   The jury settled the conflict in the testimony, and the court will not interfere.   State v. Matthews, 202 Mo. 148; State v. Tetrick, 199 Mo. 100.   Appellant complains that the court refused to permit the appellant to show upon cross-examination that the prosecuting witness, Jack, and by appellant's testimony, that Stephens entered the enclosure of the jail, where appellant was, after the assault, and pointed his pistol at the appellant, and told him he would kill him.   Appellant contends that this was a part of the *res gestae*.   In this he is in error.   What occurred between Stephens and appellant would not be admissible; it was with reference to another offense, if any, as no conspiracy was alleged between Jack and Stephens, and the court would have committed error in permitting what Stephens did to have been brought into the case.

KENNISH, P. J.—Appellant was tried at the November. term, 1909, of the circuit court of Dent county, upon an information charging him with having made an assault with a deadly weapon upon one John W. Jack with intent to kill.  He was convicted, sentenced to pay a fine of one hundred dollars, and appealed to this court:

The evidence at the trial was very conflicting as to whether the defendant or Jack, the prosecuting witness, was the aggressor in the encounter out of which the prosecution arose.

As shown by the evidence for the State, the facts were as follows:

The defendant was a practicing physician in the city of Salem, and Jack was the city marshal.  During the forenoon of June 26, 1908, the defendant had an altercation with John Stephens, the prosecuting attorney of Dent county, on the streets of the city of Salem.  Jack arrested the defendant and took a revolver from him.  Defendant was taken before the police judge and forthwith tried on a charge of carrying concealed weapons.  He was fined and immediately paid his fine.  He then demanded the return of his revolver, and Jack refused to return it.  He repeated the demand several times and appealed to the police judge and city attorney to compel Jack to return the weapon to him.  They both replied that they had no power to do so.  During this discussion the defendant and Jack, both became very much enraged and the defendant said it did not matter. whether Jack returned the weapon or not; that he would, kill both Jack and. Stephens before sundown.  Jack then left the court room, and shortly thereafter the defendant and the city attorney left the room together, the city attorney accompanying the defendant to the door of the latter's office.

Late in the afternoon of the same day the defendant went from his office to the postoffice.  The entrance

to both offices was on the south side of the street, the postoffice being west of the defendant's office. There was a sidewalk about twelve feet wide on that side of the street. When the defendant went to the post-office Jack was standing at the outer edge of the sidewalk, between defendant's office and the postoffice, engaged in conversation with two men. The defendant went into the postoffice and in a very short time came out again, with his hand in his pocket, and walked diagonally across the sidewalk in the direction of Jack. He walked up to Jack, drew a derringer pistol from his pocket, and said, "Damn you." Jack, with his left hand, grabbed defendant's right hand, in which defendant held the pistol; and at the same time, with his right hand, drew his own revolver. The defendant grabbed Jack's right hand with his left hand. A scuffle ensued, during which two shots were fired by Jack, one of which wounded defendant in the thigh. The defendant attempted to fire his pistol, but was prevented from doing so by Jack, who gripped his hand in such a way that he could not fire. Jack threw the defendant upon the sidewalk, and a bystander took defendant's weapon from him and gave it to Jack. The defendant was then taken to the city jail by Jack, and a physician was called to attend to his wound. Jack testified that defendant had on several occasions previous to that day made threats against him.

According to the evidence for the defendant, the facts were as follows:

When the defendant was fined in the police court during the forenoon he paid his fine and demanded the return of his revolver, giving as his reason for wanting the revolver that he was afraid he would be killed by Stephens and wanted the revolver for protection. When the police judge and city attorney told him they could not compel Jack to give him the weapon, they told him the city attorney would accompany him back to his office and protect him. The city attor-

ney accompanied him to his office. In the afternoon he wanted to go to the postoffice for his mail. He was afraid he would be injured by Stephens and for that reason put a small derringer pistol in his pocket. He went to the postoffice, procured his mail and started back to his own office. In returning to his office he was compelled to pass Jack, who was standing on the sidewalk. The defendant could not walk very steadily, as he was crippled from having had one of his hips dislocated. As he turned from the door of the postoffice and started to his own office he, by reason of his crippled hip, lurched or staggered in the direction of Jack, whereupon Jack grabbed him by the arm and drew a revolver. Defendant drew his pistol, and at the same time grabbed Jack's hand. In the scuffle that ensued defendant did not fire his pistol, nor attempt to fire it, because his whole concern was to prevent Jack from shooting him. Jack attempted to place his revolver against defendant's breast, but defendant prevented it by pushing his hand away. Jack fired two shots, one of which struck defendant in the thigh. Defendant was thrown and a bystander took his pistol from him and gave it to Jack. Defendant was then taken to the jail and a large crowd followed him to the jail, Stephens being in the crowd. The defendant denied having made any threat against Jack, either at the police court in the forenoon or at any other time and place.

I. Appellant complains that the information is fatally defective in that it fails to allege that the assault was committed with a felonious intent. The information charges that "E. A. Duncan at and in Dent county, Missouri, on the 26th day of June, 1908, in and upon the body of one John W. Jack, then and there being, feloniously, on purpose, and wilfully with a deadly weapon, to wit, a pistol loaded with gun powder and leaden balls, which the said E. A. Duncan

then and there held, did then and there make an assault with the intent him the said John W. Jack, then and there feloniously to kill," etc. The offense is charged in accordance with the form found in Kelley's Criminal Law and Practice, section 579, which form has received the express approval of this court. The information is therefore sufficient and would have been sufficient without the use of the word "feloniously" preceding the words "to kill." [State v. Hendrickson, 165 Mo. 262; Kelley, Crim. Law and Prac. sec. 579.]

II. It is next assigned as error that there was no proof of the venue of the crime. The record does not sustain this contention. The prosecuting witness, after having testified in detail as to the facts of the assault, was asked, "What State and county did this happen in, Mr. Jack," and answered, "It happened in Dent county, State of Missouri." The question and answer clearly had reference to the alleged crime and therefore there was direct and positive proof of the venue.

III. Complaint is made by appellant that: "The record does not show that the jury was sworn to try the issues in the case between the State and the defendant." The record recites that: "This cause is proceeded with before the following jury, duly impaneled and sworn, to wit"; the names of the twelve jurors follow, and the sentence concludes with this language: "twelve good and lawful men summoned from the body of the county of Dent."

The question of the sufficiency of the record recital as to the swearing of the jury in a criminal case was considered by this court in the case of State v. Mitchell, 199 Mo. 105. While several cases are referred to in that case, in which the record recital as to the swearing of the jury was held bad, in none of such cases did it appear in the record that the jury was "duly sworn." The authorities are agreed that

the record must show that the jury which tried the case was sworn. But if it appears in the record that the jury was "duly impaneled and sworn," the presumption attaches that the jury was properly sworn. [State v. Schoenwald, 31 Mo. 147; State v. Mitchell, supra; 12 Ency. Pl. and Pr. 523; Thompson-Merriam on Juries, sec. 299.] In accordance with the foregoing authorities we hold that it sufficiently appears that the jury was regularly sworn to try the case.

IV. It is contended that the evidence fails to show that an assault was made by the defendant upon the prosecuting witness, Jack. All that need be said upon this point is that, as appears from the statement of facts heretofore made, there is testimony which, if believed, leaves no doubt that the defendant was the aggressor. There was also testimony which, if believed, would have warranted a verdict of acquittal on the ground that Jack first assaulted the defendant. It was the province of the jury to weigh the evidence and determine the facts. And it is a well recognized rule of law that if there is evidence tending to prove the facts as charged this court will not disturb the verdict. [State v. Fields, 234 Mo. 615; State v. Sharp, 233 Mo. 269; State v. Cannon, 232 Mo. 205.]

V. After the alleged assault had been committed on the prosecuting witness, Jack, and after the defendant had been taken to the jail, an altercation occurred between the defendant and one Stephens, in which it is claimed the latter drew a revolver on the defendant and threatened to kill him. The defendant sought to introduce testimony of Stephens's conduct in thus drawing his weapon, for the purpose of showing why he, defendant, had a pistol in his possession at the time of the difficulty with Jack. It is always competent for a defendant charged with using or attempting to use a deadly weapon, to show why he had the weapon in his possession at the time of the difficulty. [State

v. Kretschmar, 232 Mo. 29; State v. Heath, 221 Mo. 565.] The defendant availed himself of this right, in his own testimony, by explaining his possession of the weapon consistently with an innocent purpose and intent. But we are not aware of any principle of law that would authorize the admission in evidence of the acts and conduct, after the assault, of one who was not present or a party to it, for the purpose of showing why the defendant had in his possession a deadly weapon at the time of the alleged offense. We think this evidence was properly excluded.

Finding no error in the record, the judgment is affirmed. *Ferriss, J.*, concurs; *Brown, J.*, not sitting.