# THE STATE v. PEARL BAIRD, Appellant.

### Division Two, May 29, 1917.

1. **INFORMATION**: Failure to Use Felonious Before Intent. An information charging that defendant "feloniously . . . did then and there make an assault with intent him . . . then and there to kill" charges a felony and is not bad because it does not use the word "felonious" before the word "intent." [Overruling State v. Clayton, 100 Mo. 516.]

2. **ASSAULT**: Intent: Proof of Both: Instruction. In a prosecution for assault with intent to kill, the intent with which the assault was committed is a necessary element which must be proved, whether a wound be inflicted or not, but the fact that a wound was inflicted may be proven as evidence of intent; and an instruction that requires the jury to find both an assault with intent to kill and a wounding by that assault places an unnecessary burden on the State, but it is an error of which defendant cannot complain; it does not require him to purge himself of two crimes before he can be acquitted. [Distinguishing State v. Melton, 102 Mo. 683.]

3. **REPUTATION**: Outside of Issues. In a prosecution for assault to kill, impeachment testimony that the reputation of a witness for defendant for peace and quietude is bad, and that the reputation of defendant's father for good citizenship and for abiding by the law is bad, is inadmissible, and reversible error. Their reputa-

tion in those respects is outside the issues.  Only their reputation for truth and veracity is involved.

4. —————: **Of Defendant: No Exception.**  Whether an inquiry as to the reputation of the defendant, charged with felonious assault, for peace and quietude made before he had himself put that reputation in issue, was error, will not be decided, unless the record shows a proper preservation of the complaint.

5. **DEFENDANT AS WITNESS: Failure to Give Instruction.**  A judgment of guilty will not be reversed because the trial court refused to' instruct in 'conventional terms that the defendant was a competent witness in his own behalf.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED AND REMANDED.

*Sam J. Corbett, Ray G. Garrison* and *J. E. Duncan* for appellant.

The information is fatally defective, in that it fails to inform the defendant of the charge against him.  It is in the exact language of the information in State v. Clayton, 100 Mo. 516.  See also State v. Davis, 121 Mo. 404; State v. Norman, 136 Mo. 1, and State v. Bond, 191 Mo. 555.  (2) The court erred in permitting the State to prove that Kit Brandon had a bad reputation for being a lawabiding citizen, the only proper inquiry being his reputation for truth and veracity for the object of impeachment.  (3) A defendant cannot be convicted of an assault with intent to kill where the evidence shows that he shot at one man and hit another, for the reason that he must have a felonious intent to shoot the man that was shot. State v. Mulhall, 199 Mo. 202.  (4) Instruction No. 1 is erroneous, because: (a) It tells the jury to find the defendant guilty if they "find and believe from the evidence that the defendant with a loaded pistol did then and there shoot and wound the said Mitt Pruitt with said pistol, and (b) that he did so feloniously, willfully and on purpose with the intent to kill the said Mitt Pruitt," there being no charge in the information that the defendant shot and wounded Mitt Pruitt, but only the charge that he made an assault.  The assault could have been made with-

out either a shooting or wounding. The defendant was not charged with shooting Mitt Pruitt, but by this instruction he was convicted for it. This was error. State v. Melton, 102 Mo. 685; State v. King, 111 Mo. 578; State v. Johnson, 129 Mo. 26.

*Frank W. McAllister*, Attorney-General, and *Lewis H. Cook* for the State.

The information in this case is sufficient in form and substance. It contains every essential allegation to constitute the crime charged, follows the language of the statute and the approved forms of this court. R. S. 1909, sec. 4482; State v. Dunkin, 237 Mo. 195; State v. Helton, 234 Mo. 559; State v. Hendrickson, 165 Mo. 262; Kelley's Crim. Law & Proc., sec. 579.

FARIS, J.—Defendant, charged by an information filed in the Pemiscot Circuit Court, under Section 4482, Revised Statutes 1909, with an assault with intent to kill one Mitt Pruitt, was found guilty by the trial jury and his punishment assessed at imprisonment in the penitentiary for a term of three years. From the resulting sentence following this verdict he has, in the conventional way, appealed.

The facts of the case run briefly thus: On the 23rd of August, 1915, a number of persons, including Mitt Pruitt, the man who is said to have been assaulted, were driving in farm wagons across the corn field of defendant with the intention of proceeding to a neighborhood cemetery in order to bury the body of a small child. It seems that the route which was being followed by this burial procession had formerly been a road, but that defendant (whether wrongfully or not does not appear) had fenced the same up and had planted it in corn. While this procession was in the field of defendant the latter suddenly appeared near the wagon occupied by one Kit Brandon and after the use of the conventional opprobrious epithets and after having expressed his intention of exterminating the living portion of the entire procession, began shooting at Brandon. The first shot struck Bran-

don, who thereupon either jumped from the wagon or fell out of it. After Brandon fell and while he was on the ground defendant shot at him twice more, striking him each time, wounding him seriously but not mortally. Mitt Pruitt, the person charged in the information herein as having been assaulted, was riding in a wagon in the rear of the one occupied by Brandon. According to the testimony offered by the State, Pruitt asked defendant, while the latter was engaged in shooting Brandon, not to shoot any more. Immediately thereafter defendant turned to Pruitt and with an oath said to the latter, "I will kill you too," and immediately fired, shooting Pruitt through both legs and the scrotum.

Although the entire attitude and language of defendant, as we find them among the *res gestae* of the case, indicate that his anger had been caused by, and the reason of his shooting Brandon and Pruitt was that, the funeral procession was driving through his field without his permission and against his consent, yet his defense was that he had not intentionally shot Pruitt, but shot the latter accidentally while firing at Brandon. The reasons given by defendant when testifying as a witness for himself for his assault upon and his shooting Brandon were that the latter had been criminally intimate with his (defendant's) wife. Upon the trial, remarkable to say, Brandon, who had then recovered from his somewhat serious wounds, testified for defendant and admitted his intimacy with defendant's wife, and the fact that knowledge thereof had come to defendant shortly before the shooting. Brandon also swore that defendant was not shooting at Pruitt, but was shooting at the witness. Upon this latter question, however, the preponderance of the evidence was against defendant and the jury evidently found against him thereon, as their verdict conclusively shows, and we need not trouble ourselves with this point.

Following the case of State v. Mulhall, 199 Mo. 202, the trial court instructed in substance that if defendant were in fact shooting at Brandon with the intent to kill the latter and in so doing without intending so to do shot and wounded Pruitt, he should go acquit. Notwithstanding this instruction the jury found defendant guilty and

assessed his punishment at three years' imprisonment in the penitentiary.

Such further facts as shall serve to make clear the points urged upon our attention will be set forth in connection with our discussion of these points.

Three points alleged to be meet for reversal are urged upon our attention: (a) The insufficiency of the information; (b) the badness of instruction numbered 1, and (c) errors in the admission of certain evidence.

I. Taking these up in the order in which we set them out, we note the information, omitting verification, venue and merely formal parts, which are conventional and in no wise questioned, is in the following form, to-wit:

*Information.*

"Comes now C. E. Bragg, prosecuting attorney for and within the county of Pemiscot and State of Missouri, who upon his official oath as such prosecuting attorney informs the court that, in the county of Pemiscot and State of Missouri, upon or about the 23d day of August, 1915, one Pearl Baird, upon the body of one Mitt Pruitt, then and there being feloniously, on purpose and wilfully, with a certain deadly weapon, to-wit, a pistol, loaded with gunpowder and leaden balls, which he, the said Pearl Baird, then and there had and held, did then and there make an assault with the intent him, the said Pruitt, then and there to kill, against the peace and dignity of the State."

While an information similar to the above was held bad in the case of State v. Clayton, 100 Mo. 516, the latter case did not follow precedents, nor has it been followed consistently, but on the contrary wholly ignored by practically all of the later cases. [State v. Hendrickson, 165 Mo. 262; State v. Helton, 234 Mo. 559; State v. Duncan, 237 Mo. 195; Kelley's Crim. Law & Proc., sec. 579.] The alleged phase of badness and that decided so to be in the Clayton case, consists in the failure to specifically prefix before the allegation of intent the word "felonious." Stripped of intervening verbiage the information herein charges that defendant "upon the body of one Mitt Pruitt, then and there being, feloniously . . . did then and

there make an assault with the intent him the said Pruitt then and there to kill." It is a little difficult to discover upon a careful scrutiny of the above language, any solid ground on which to bottom the specific criticism leveled against this information. It seems to charge that the assault was feloniously made with the intent to kill the person assaulted. So closely is the averred *felonious* assault coupled with the alleged intent with which such assault was made that it seems wholly captious to contend that the pleader, merely in order to comply with the constitutional mandate of apprising defendant of the crime with which he stands charged, must go yet farther and again use the word "feloniously" in specific designation of and in juxtaposition with the intent. The allegation that the assault was made feloniously, in our opinion, sufficiently complies with the rule that all felonies must be charged to have been done feloniously. [State v. Dixon, 247 Mo. 668.] For if the assault was made (as averred) feloniously, and the intent to kill by such felonious assault is proven, it follows that a felonious intent to kill is sufficiently charged, if not clearly charged. We do not think that the case of State v. Clayton, 100 Mo. 516, should be longer followed and so we overrule this contention of defendant; suggesting in passing, however, that the books are full of better and more elastic precedents than the form of the indictment found herein and in the Clayton case. The lack of elasticity in the precedent herein followed is the direct cause of the mooting of the alleged error next below discussed.

II. The court *nisi* gave the below instruction, of which defendant complains, to-wit:

"The court instructs the jury that if you find and believe from the evidence in this case, beyond a reasonable doubt, that at the county of Pemiscot and State of Missouri, on or about the 23rd day of August, 1915, the defendant Pearl Baird, did then and there make an assault upon the prosecuting witness Mitt Pruitt with a pistol, loaded with gunpowder and leaden balls, and did then and there shoot and wound the said Mitt Pruitt with said pistol and that he did so feloniously,

Instruction.

wilfully and on purpose with the intent to kill the said Mitt Pruitt, you will find the defendant guilty of assault with intent to kill as charged in the information and assess his punishment at imprisonment in the penitentiary for a term not exceeding five years or in the county jail not less than six months or by a fine not less than $100 and imprisonment in the county jail not less than three months or by a fine not less than $100.''

The specific complaint is that by this instruction two crimes are coupled together, and it is urged that defendant must purge himself of both crimes (with one of which he is not charged in the information) set out in this instruction before he can be acquitted of either. Upon this contention our attention is directed to the case of State v. Melton, 102 Mo. 683. We do not think the latter case furnishes any sufficient authority for the defendant's position. It is settled law that upon a prosecution for assault with intent to kill, while the assault may exist, be perpetrated and be proven, whether a wound be inflicted or not, yet as the intent with which the assault was made is a necessary element in the case of which proof, direct or circumstantial, must be made, it has been held almost uniformly that the fact that a wound was inflicted is permissible to be proved as evidence of intent. In the case called to our attention the instruction was bad, for it coupled the two offenses by the disjunctive, and clearly allowed the defendant therein to be convicted if the jury found *either state of facts* to exist. Here, in the instant case, the conjunctive is used, thus requiring the jury to find *both state of facts existed* before defendant *could be convicted at all.* In short, an extra burden is put upon the State by requiring as a condition precedent to conviction that the jury find both an assault with intent to kill and a wounding by that assault before defendant shall be found guilty of any offense. A bare reading of the instruction here, in parallel columns with the one condemned, shows the difference in the two cases, and discloses the vice of the latter. The State could well have complained, if the State could appeal and were appealing, for that this instruction broadened the issues, but it helped defendant; it did not harm him. and in short was error committed in his favor

for which he may not be heard to complain. [Sec. 5115, R. S. 1909.] We are for these differences constrained to disallow this contention likewise.

III. Upon the trial the learned court *nisi* permitted the witness Kit Brandon, who testified for defendant, to be impeached as to veracity, for that in the opinion of impeaching witnesses his reputation for peace and quietude was bad. This latter reputation was not in issue, and this was error. Likewise the court allowed testimony to come in over defendant's objecti.. and exception, as to whether one Tobe Baird, the father of defendant and a witness for the latter, possessed a good reputation for good citizenship, and for abiding by the law.

Reputation.

In both of these instances the impeaching witnesses gave it as their opinions that the reputations inquired about in the behalves mentioned were respectively either bad, or badly mixed. This was error. Brandon and the elder Baird were but witnesses in the case; so alone the question of their reputations for truth and veracity was involved, or at most this phase of reputation and that of morality. There was no place in the case for inquiries as to the phases of peace and quietude and lawabidingness—if to express the thought clearly we may coin a word—unless we may judicially notice, as we may not, that a citizen who is not lawabiding or who is not quiet and peaceful, is always a perjurer.

Complaint is also made that the learned court *nisi* permitted the State to inquire as to the reputation of the defendant himself for peace and quietude, before he had himself put that reputation in issue. This is true, but while this was a potential error of much gravity no proper preservation of it is shown by the record and we are therefore precluded from noticing it.

IV. Complaint is made in the motion for a new trial that the trial court erred in refusing to instruct in conventional terms that the defendant is a competent wit-. ness in his own behalf. [Cf. State v. Maguire, 69 Mo.

**Defendant As Witness.** 197, and cases cited in dissenting opinion in State v. Finkelstein, 269 Mo. 612.]

In view of the fact that this court In Banc has recently in the Finkelstein case, supra, held that it is reversible error to give such an instruction, we may be pardoned for refusing to consider further an assignment of error bottomed on the failure to give it; *a fortiori,* since if the instruction had been given, defendant would be here now urging the giving thereof as error, and citing the Finkelstein case as authority for such contention.

For the errors noted let the case be reversed and remanded for a new trial. All concur.