THE STATE v. WALTER SHEPARD, Appellant.—67 S. W. (2d) 91.

Division Two, December 20, 1933.

*Roy McKittrick,* Attorney-General, and .*Olliver W. Nolen,* Assistant Attorney-General, for respondent.

ELLISON, P. J.—The defendant was charged by information with murder in the first degree, the killing of one Lizzie Morrow in Harrison County. On a trial in the Circuit Court of Grundy County on change of venue he was convicted and his punishment assessed by a jury at imprisonment for life in the State penitentiary. He appeals bringing up an incomplete bill of exceptions which sets out the testimony of only four witnesses, under authority of the concluding proviso of Section 3756, Revised Statutes 1929. He has filed no brief. His motion for new trial contains eleven assignments of error, which complain: of the overruling of his demurrers to

the evidence at the close of the State's case and of the whole case; of the erroneous admission and exclusion of evidence; of the refusal of requested instructions; and of the action of the court in permitting the State to cross-examine one of its own witnesses.

So far as can be gathered from the fragmentary showing in the bill of exceptions, the outline facts appear to be about as follows. Mrs. Morrow was an aged woman living alone on a farm in Harrison County about four miles north of Bethany, the county seat, on U. S. Highway 69. She had been accustomed to sell the products of her farm for cash, keeping the money at home. The December previous to her death she paid her taxes in cash in the amount of about $31, presenting some old style, large size paper money. On Monday, March 7, 1932, she was found dead in her home. There had been a heavy snow late in the afternoon and during the night of the previous Friday, March 4. An examination of the premises disclosed no tracks or footprints in the snow. Also the chickens were found shut up in the chicken house and the livestock were in bad condition. From all this the conclusion was drawn that she had been murdered on Friday, March 4, before the snow storm. About nine-thirty in the evening of that day while the weather was very disagreeable, but before it had begun to snow, the defendant was seen in Bethany going toward and into his home. At a point about two blocks back in the direction from which he had come the street on which he was walking intersected Highway 69, whereon Mrs. Morrow's farm was located.

This is about all that appears definitely from the testimony of the four witnesses preserved in the record presented here. Indeed it is not shown the deceased was murdered, but only that she was found dead. Other facts may be inferred from the statements of counsel scattered through the record and from questions that were asked but not answered, such as that Mrs. Morrow had as much as $900 on the premises before her death none of which could be found afterwards; also that the defendant was a poor man but bought an automobile shortly after her death; that he had suggested to someone robbing the old woman; and that he said he had robbed her and feared he might have killed her. These facts and statements, as we say, were not proven so far as this record shows, but are implied by the statements and unanswered questions of counsel. The names of forty-five witnesses were indorsed on the information. There is no way of telling from the record how many of these testified at at the trial, but it is evident a great deal of testimony was introduced beside that preserved in the bill of exceptions. The order of the circuit judge allowing the bill of exceptions recites that it is not a complete transcript of all the evidence.

I. The opening assignments in the motion for new trial are that the court erred in overruling the defendant's demurrer to the

evidence at the close of the State's case and at the close of the whole case. The first question to be determined is whether we can consider these assignments in view of the abbreviated record presented, with much of the evidence left out.

Section 3756, Revised Statutes 1929, provides in substance that where an appeal shall be taken in a criminal case, which shall operate as a stay of proceedings, it shall be the duty of the clerk to make out a full transcript of the record, including the bill of exceptions, judgment and sentence, and to certify and transmit the same to the proper appellate court. In a re-enactment of the statute by Laws 1925, pages 194, 199, a proviso was added to the effect that the defendant or his attorney and the attorney for the State may agree in writing upon an abbreviated or partial transcript of the evidence and oral proceedings ''as sufficiently presenting to the appellate court the issues involved on such appeal,'' such written agreement to be incorporated in the transcript. While no express written agreement was made by the parties in this case, yet at the conclusion of the transcript the word ''approved'' is indorsed, and under it appear the signatures of counsel for both sides. It is held in State v. Glass, 318 Mo. 611, 615, 300 S. W. 691, this is a sufficient compliance with the statutory requirement and constitutes an agreement.

As indicated above, Section 3756 applies only to appeals and writs of error which *shall operate as a stay of proceedings*. Section 3742, Revised Statutes 1929, specifies what appeals or writs of error do stay proceedings. It provides that only appeals or writs of error in *capital cases*, or cases wherein the trial court or judge, or this court or some judge thereof, shall have made an order to that effect, will stay proceedings. Several decisions of this court have ruled that the ''capital cases'' contemplated by the statute are only those cases in which the death penalty has been assessed. [Ex parte Dipley, 233 Mo. 235, 135 S. W. 56; State v. Piersol (Mo.), 210 S. W. 58; State v. Hall, 312 Mo. 425, 445, 279 S. W. 102, 109.] The death penalty was not assessed in the instant case and no order was entered by the trial court or this court making the appeal stay proceedings. Therefore Section 3756, does not apply. Instead, the case comes under Section 3757, Revised Statutes 1929.

Section 3757 provides that when an appeal or writ of error does not operate as a stay of proceedings ''such transcript'' (referring over to the preceding Section 3756) shall be made out, certified and returned on the application of the appellant or plaintiff in error. It is held in State v. Frey, 316 Mo. 66, 69, 289 S. W. 910, 911, that since Section 3757 requires the filing of a transcript such as is provided for in Section 3756, and since Section 3756, as amended in 1925, permits the filing of two kinds of transcripts, namely, either a full transcript, or an abbreviated transcript where the parties so stipulate, therefore either a full or an abbreviated transcript likewise may be filed under Section 3757. From this it follows that it was

proper for the parties to file their abbreviated transcript in the instant case though it is not a capital case in the sense that the death penalty was not assessed.

The statute, Section 3756, says the agreement provided for therein shall be that the abbreviated transcript sufficiently presents "the issues involved" on the appeal. The issues involved (at least in this case where no brief is filed by the appellant) are the issues raised and preserved by the motion for new trial. One of these issues tendered by the motion is that the defendant's demurrer to the evidence should have been sustained. If there were no evidence in the case other than the testimony of the four witnesses preserved in the partial bill of exceptions brought up, the demurrer should have been sustained. Did counsel for the State agree themselves out of court by stipulating that the abortive transcript sufficiently presented the issues involved, when one of those issues was whether there was enough evidence to support the verdict?

We think not. The statute discloses its own purpose, which is to dispense with the bringing up of a full transcript when the parties can by agreement reduce the size of the record and yet adequately preserve for review the issues raised on the appeal. Now it is obvious that a transcript containing only the testimony of four unimportant witnesses out of a much larger number, and omitting even proof of the *corpus delicti*, could not have been thought sufficient to present the issue whether enough evidence was presented to support the verdict and conviction. It has long been the rule in this State, as of necessity it must be, that where a litigant in an appellate court seeks to challenge the sufficiency of the evidence against him, adduced in the lower court, he must bring up *all* of that evidence. [State v. Clarkson, 96 Mo. 364, 9 S. W. 925; State ex rel. v. Jarrott, 183 Mo. 204, 216, 81 S. W. 876, 878.] We will not say the parties to a criminal case cannot agree upon a transcript *condensing* that evidence, or showing the evidence preserved is the substance of the evidence presented below; but that is not the situation here. The transcript filed in this case recites on its face that it does not contain all the evidence introduced in the trial court, and further shows it does not reflect the substance of all the evidence presented below. The parties, even by an agreement under Sections 3756 and 3757, cannot compel us to pass on a question which has no adequate basis in the record presented, or one upon which the trial court did not pass. We therefore conclude the first two assignments in appellant's motion for new trial, complaining of the overruling of his demurrers to the evidence, cannot be considered.

II. The third and fourth assignments in the motion predicate error on the admission of the following testimony. The State proved the deceased had paid her taxes in December next before her death in March, in currency—old style, large size bills. It was also

shown that she was a person of frugal habits and that she sold her farm produce for cash. We doubt if these assignments are sufficiently specific under the new trial statute, Section 3735; Revised Statutes 1929; they simply say it was error to admit the foregoing testimony but do not say why. However, when we turn to the transcript we find the objection made in the trial court was that the testimony was irrelevant and immaterial unless *connected up*. Appellant has not filed a transcript full enough to show whether the testimony was connected up. But from the outlines of the case we are satisfied the evidence was proper. The information was in three counts, based on Section 3982, Revised Statutes 1929, a charging, first, murder by assault; second, murder in the perpetration of a burglary; and third, murder in the perpetration of a robbery. The evidence was largely if not entirely circumstantial. It was proper to show that Mrs. Morrow kept money in her home, if the defendant knew it, as tending to establish a motive, 1 Wigmore on Evidence (2 Ed.), section 390, page 717, section 392, page 719; State v. Jackson, 95 Mo. 623, 652, 8 S. W. 749, 761, or even if he did not know it beforehand in case the evidence further showed the money was gone when she was found murdered.

III. One witness sued by the State was James Wyatt. When the State subsequently put another witness named Oscar Stratton on the stand, counsel for the defendant asked him on cross-examination if he knew Wyatt's general reputation for truth and veracity and he said he did not. He was then asked if he knew the witness's general reputation as a *law abiding* citizen. The court sustained the State's objection to the question and the defendant made an appropriate offer of proof which was rejected. The fifth assignment in the motion for new trial complains of this ruling. The proffered testimony was properly excluded. Our earlier decisions allowed considerable latitude in impeachment by reputation, but since the fundamental question is the credibility of the witness the tendency of more recent cases has been to restrict the inquiry to such traits as truth and veracity, honesty and general morality. [State v. Scott, 332 Mo. 255, 266, 58 S. W. (2d) 275, 280.] It was ruled in State v. Gant (Mo.), 33 S. W. (2d) 970, 973, that the witness's reputation for good citizenship cannot be gone into, and State v. Baird, 271 Mo. 9, 16, 195 S. W. 1010, 1013, expressly decides proof of reputation for "lawabidingness" has no place in the case.

IV. Another witness called by the State was one Lewis Darryl Hillyard. He, it seems, also was charged with the same murder but by a separate information. After answering a few preliminary questions he refused to testify further on the ground that his testimony might tend to incriminate him, and invoked his constitutional rights. Though, in several instances, admonished by the

court that his constitutional rights were not being invaded, and that he was in contempt of court, he nevertheless persisted in his refusal. He declined to say what kind of a car he was driving in the forepart of March (about the time of the murder) and whether he knew the defendant. He also refused to answer whether he saw the defendant on March 4, the date of the murder, and whether the defendant on that day arranged with him to borrow his (the witness's) automobile that night. He was asked further whether the defendant got the car that night between seven and nine P. M., from the witness's home and returned it later the same evening, taking therefrom a burlap sack which he said contained meat. Next the prosecutor inquired if he remembered of the defendant's driving up to a filling station where he was working on Monday afternoon, March 7, with an automobile on which some wood was loaded and the witness refused to answer.

It appears that this witness Hillyard had testified at some former circuit court trial where the murder of Mrs. Morrow was involved. From the transcript it seems probable the trial was his own, that he was on the stand under cross-examination, and that the jury failed to agree upon a verdict. At any rate, the prosecutor produced a transcript of the witness's testimony at that trial and asked him leading questions, which amounted to a cross-examination. He was asked if he hadn't testified about the above matters at this former trial and whether he had not admitted then, and also admitted to the sheriff and others, that he did have a talk with the defendant near the post office on March 4 in which he agreed to loan the defendant his automobile that night; that he did loan the automobile to the defendant; and that the defendant did return the car and take a sack of meat out of it. He was also asked if he had not testified at the former trial and admitted to the officers that the defendant had driven by his filling station on the afternoon of Monday, March 7, in an automobile loaded with wood, and had had a conversation with him, in which the defendant said he had passed by the Morrow farm and noticed the cattle were restless "and that he now thought he killed the woman." (The answer in the transcript to that question was: "No, sir, he never said that.") The next question and answer read to him from the transcript were "Q. And said it amounted to about $900? A. I don't believe I told them that."

We cannot incorporate in this opinion the whole of the examination of this witness Hillyard, covering twenty-nine pages of the record filed in this court; but the foregoing is sufficient to show the nature of it. In his motion for new trial the defendant complains of this "cross-examination" of the State's own witness by the prosecuting attorney, saying it was prolonged and that "the State was permitted to ask if certain questions and answers were asked and made by such witness out of the presence and hearing of defendant;

that the very nature of such questions and answers were such as to prejudice the jury against this defendant.''

Since Hillyard was not joined with the defendant in the same information or indictment, he was a competent witness. [State v. Parker, 324 Mo. 734, 741, 24 S. W. (2d) 1023, 1026; State v. Cardwell, 332 Mo. 790, 60 S. W. (2d) 28, 32.] His claim of privilege on the ground that his testimony might tend to incriminate him was strictly personal to him—a matter between him and the State. The claim could not be interposed for him by the defendant; nor can the defendant object even though the court failed to accord the witness due constitutional immunity. [40 Cyc., p. 2547 et seq.; State v. Kennedy, 154 Mo. 268, 285, 55 S. W. 293, 298.] If, therefore, the evidence sought to be elicited was competent as against the defendant, the defendant has no ground for complaint unless the manner in which the examination was conducted violated his rights.

When a witness is neither unwilling nor unfriendly to the State, and there is no need of refreshing his memory or of saving time on formal or preliminary matters, it is held to be error for the prosecutor to lead the witness. [State v. Culpepper, 293 Mo. 249, 258, 238 S. W. 801, 804.] But where the witness is unwilling or unfriendly, especially if he be one whose testimony is necessary or important, the court in the exercise of a sound discretion may permit the asking of leading questions amounting to a cross-examination. This is particularly the case if the State is surprised by the witness's being unexpectedly hostile. [Underhill on Crim. Evid. (3 Ed.), sec. 344, p. 475, sec. 377, p. 534; State v. Tally, 22 S. W. (2d) 787, 788; State v. Wells (Mo.), 234 S. W. 825, 827; State v. Kebler, 228 Mo. 367, 382, 128 S. W. 721, 725; State v. Duestrow, 137 Mo. 44, 84, 38 S. W. 554, 564.]

In the instant case while the prosecuting attorney did not expressly claim surprise, yet it does appear that the witness had testified at a former trial and answered most of the questions which he refused to answer in the trial below; and the facts were important and of such nature that they could not be proven by anyone else. This was sufficient to justify the court in allowing the prosecuting attorney to press him on these matters. [State v. Duestrow, 137 Mo. l. c. 75, 38 S. W. l. c. 564.]

The closest point presented by the appellant's assignment is whether it was proper for the prosecutor to ask the witness in the presence of the jury if he had not told the officers that the defendant told him certain things, and whether he had not testified at the former trial that the defendant told him those things—all in the absence of the defendant. If the prosecutor had sought to put the officers on the stand, or to introduce the transcript of the witness's former testimony, to prove the witness had said out of the presence of the defendant that the defendant made the incriminating statements to him, the evidence would have been hearsay and incompetent. But the ques-

tions were not asked for the purpose of proving by indirection and hearsay that the defendant made the damaging statements: they were propounded in an effort to elicit the proof from the witness, himself. *He* could have testified to the statements. It has been held a number of times that when a witness proves recalcitrant he may be reminded of his extrajudicial statements or of his testimony in some other proceeding concerning the subject of the inquiry. [Underhill on Crim. Evid. (3 Ed.), sec. 377, p. 536; State v. Wells, 234 S. W. 1. c. 827; Layton v. State, 61 Tex. Cr. Rep. 507, 135 S. W. 557; State v. Barrett, 117 La. 1086, 42 So. 513.] If the defendant had desired he could have asked an instruction that the questions asked by counsel and the matter read from the transcript of the witness's former testimony were not to be considered as proof of the truth of the facts recited.

V. The next assignment in the motion for new trial is that after the State and the defense had closed the State was permitted to introduce in evidence the testimony of one Amos Mullins, whose name was not endorsed as a witness on the information. As we have said many times, the motion for new trial does not prove itself. It is not verified and no affidavits were filed therewith. The bill of exceptions does not show that Amos Mullins testified at all, or, if he did, what he said. The assignment cannot be considered.

VI. The next assignment complains of the court's refusal to give an instruction requested by the defendant which said, among other things: "You are instructed that the evidence of an accomplice alone, unless corroborated by other substantial and material evidence, is not sufficient to convict the defendant." This is not good law and the instruction was properly rejected. A defendant can be convicted on the uncorroborated *testimony* of an accomplice if the jury believe it. [State v. Stogsdill, 324 Mo. 105, 123, 23 S. W. (2d) 22, 28.]

VII. The next assignment is that the court erred in refusing to give a requested instruction on circumstantial evidence. While the instruction is set out in full in the motion, no reasons are given why the rejection of the instruction was error. This, it is held in State v. Bailey, 320 Mo. 271, 278, 8 S. W. (2d) 57, 59, is not sufficiently specific to constitute a valid assignment under our new trial statute. [Sec. 3735, R. S. 1929.] Furthermore, the transcript leaves us in the dark as to whether the State's case was based wholly on circumstantial evidence. The instruction recites that it was, but there may have been some direct evidence and the court may have refused it for that reason. Furthermore, if all the evidence in the case on which the State relied was not circumstantial, it was not error to refuse to give a circumstantial evidence instruction. [State

v. Lyle, 296 Mo. 427, 439, 246 S. W. 883, 886; State v. Hadlock, 316 Mo. 1, 7, 289 S. W. 945, 947.]

VIII. Of the three remaining assignments in the motion for new trial the ninth complains "that the verdict of the jury is against the evidence, and there is no substantial evidence to support the verdict." So far as this assignment merits consideration it has already been discussed in the consideration of the defendant's demurrer to the evidence. The tenth assignment is "that the verdict is against the law as declared in the instructions." This assignment has often been held too indefinite to comply with the new trial statute. [Sec. 3735, R. S. 1929.] The eleventh and final assignment is that in arriving at their verdict the jury were influenced and swayed by the feeling and sentiment of the community against the defendant. There is nothing whatever in the record presented here to substantiate the statement of fact contained in this assignment, and as already said in this opinion, the motion does not prove itself.

We find no error in the record proper, and the judgment is accordingly affirmed. All concur.