Argued October 8; affirmed October 22, 1940

## STATE *v.* CAMERON

(106 P. (2d) 563)

*Ray B. Compton,* of Roseburg, for appellant.

*J. V. Long,* District Attorney, and *John T. Long,* both of Roseburg, for respondent.

BAILEY, J.   The defendant, Al Cameron, has appealed from judgment of conviction of the crime of assault with intent to commit rape.

■ The first assignment of error is based upon the overruling of defendant's objection to a question asked for the purpose of impeaching one of his witnesses. Mabel Emerson, aunt of the defendant, was the subject

of the impeaching question, asked George W. Sorenson, chief of police of the city of North Bend, during his examination by the district attorney as a witness for the plaintiff. Following are the question and the remarks of court and counsel:

"Q. I will ask you whether or not you are acquainted with the general reputation of Mabel Emerson as to being a law-abiding citizen.

"Mr. Compton: I object to that as being incompetent, irrelevant and immaterial and not a proper way of impeaching a witness.

"Mr. Long: As to her reputation . . .

"Mr. Compton: I think only for testimony of truth and veracity . . .

"The Court: No, I don't think you can do that. Your question goes as to what her reputation is as to being a law-abiding citizen. You may answer.

"Q. Do you know that reputation? Answer by 'yes' or 'no'. Do you know it?"

Mr. Sorenson answered that he did know and that the reputation of defendant's witness as a law-abiding citizen was bad.

A witness may be impeached by the party against whom he was called, by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief, but not by evidence of particular wrongful acts, except that it may be shown that the witness has been convicted of a crime: § 9-1911, Oregon Code 1930.

The only authority cited by the appellant to support this assignment of error is *McIntosh v. McNair*, 53 Or. 87, 99 P. 74, in which it was held that a witness could not be impeached by showing that his general reputation for integrity was bad.

The Supreme Court of Missouri has had occasion in a number of cases to consider the identical question

here presented. One of its recent rulings on this subject is found in *State v. Shepard*, 334 Mo. 423, 67 S. W. (2d) 91, wherein the court said:

"Our earlier decisions allowed considerable latitude in impeachment by reputation, but, since the fundamental question is the credibility of the witness, the tendency of more recent cases has been to restrict the inquiry to such traits as truth and veracity, honesty and general morality, State v. Scott, 332 Mo. 255, 266, 58 S. W. (2d) 275, 280. It was ruled in State v. Gant (Mo. Sup. Div. 2), 33 S. W. (2d) 970, 973, that the witness' reputation for good citizenship can not be gone into, and State v. Baird, 271 Mo. 9, 16, 195 S. W. 1010, 1013, expressly decides proof of reputation for 'law-abidingness' has no place in the case."

The Oregon statute hereinabove cited allows more latitude than do the comparable statutes of some of the other states, in proving that the witness's moral character is such as to render him unworthy of belief, yet the provision above noted does not suggest or permit that the witness's reputation be inquired into with reference to his being a law-abiding citizen. What is properly to be ascertained is the veracity of the witness. As said in *State v. Baird*, 271 Mo. 9, 195 S. W. 1010:

"There was no place in the case for inquiries as to the phases of peace and quietude and law-abidingness—if to express the thought clearly we may coin a word—unless we may judicially notice, as we may not, that a citizen who is not law-abiding or who is not quiet and peaceful, is always a perjurer."

The circuit court, in our opinion, committed error in not sustaining the defendant's objection to the question concerning the reputation of Mrs. Emerson as a law-abiding citizen, although this error, as will appear,

was not so prejudicial to the rights of the defendant as to necessitate a reversal of the judgment.

The crime was committed on January 22, 1939, at the home of the prosecutrix near the Coos Bay highway, east of Tenmile. The defendant was arrested the following day. On January 24, Mabel Emerson called at the home of the prosecutrix and there met that young woman and her father. The conversation of the three concerned principally the commission of the crime with which the defendant was charged.

Mabel Emerson testified that what the prosecutrix then told her about the attack upon her by the defendant was substantially as related by the prosecutrix on the witness stand. She further testified that the question of having the charge against the defendant dismissed was discussed and the suggestion was made by some one that Mabel Emerson pay to the prosecutrix or her father $70 in consideration for dismissing the charge.

After Mrs. Emerson left, with the statement that she would return on the following day, the father of the prosecutrix notified the sheriff's office of the circumstances of her visit and her intention to return. Before Mrs. Emerson's arrival on January 25, a deputy sheriff of Douglas county came to the home of the prosecutrix, where he was concealed so that he heard from an adjoining room the conversation that ensued when Mrs. Emerson again called upon the prosecutrix and her father. The deputy sheriff testified that he made a complete stenographic report of their conversation.

On cross-examination Mrs. Emerson admitted the correctness of substantially all the stenographic report. The apparent purpose of calling her as a witness for

the defendant was to discredit the motives of both the prosecutrix and her father, by attempting to show that they had suggested the payment of money to them to dismiss the charge against the defendant. It is obvious, however, from Mrs. Emerson's own testimony that she was trying to prevail upon the prosecutrix and her father to dismiss the charge and that she offered to pay them as much as $70 for so doing.

Mrs. Emerson admitted on cross-examination, before the above discussed impeaching question was asked Mr. Sorenson, that she had twice been convicted of the commission of a crime, and that the more recent of such convictions was had a few months prior to the trial. It is difficult to see how that question, although improper, and the answer evoked by it, could have materially affected the opinion regarding Mrs. Emerson's credibility which the jury must already have formed.

It is our conclusion that the failure of the court to sustain the objection to the question concerning Mabel Emerson's reputation as a law-abiding citizen did "not affect the substantial rights" of the defendant, and that the judgment should therefore be affirmed regardless of the error committed by the court: § 13-1225, Oregon Code 1930; *State v. Black*, 150 Or. 269, 290, 42 P. (2d) 171, 44 P. (2d) 162; *State v. Whitman*, 72 Or. 415, 143 P. 1121. We do not see how the jury could have arrived at any other verdict than that returned by it, in view of the testimony in the case.

■ The only remaining assignment of error is based upon the giving of the following instruction by the court:

"As to resistance, the law provides that there must have been actual, honest, *bona fide* resistance on the

part of the prosecutrix and that she must have used force to prevent the assault, if any, upon her. If, however, you find that resistance on her part was prevented by terror caused by threats of great bodily harm or by the exhibition of such force on the part of the defendant as made resistance on her part to seem utterly useless, then the law considers such assault to have been made forcibly and against the will of the prosecutrix. This resistance is to show two elements of the alleged crime—that is, an attempt to have carnal knowledge by force by the defendant and non-consent by the prosecutrix. These are essential elements of the crime charged in the indictment and you must be fully satisfied of their existence before you can convict the defendant.''

To the giving of the quoted instruction the defendant objected in this language:

''If the court please, I want to except to the instruction—I haven't any way of identifying it—but it was in the court's instruction where you said something about her resistance being overcome by terror. I object to that as being academic as there was no evidence of terror in the case.''

It is conceded by the defendant that the above quoted instruction is correct as an abstract proposition of law, but he urges that as given it was not applicable to the facts in evidence, in that ''the jury might have well inferred that in the mind of the court there was evidence that the resistance of the prosecutrix had been overcome by one of the means suggested by the court,'' and that the jury ''might have believed that there was evidence of terrorism, which they had overlooked but which had been remembered by the court''.

The only part of the foregoing quoted instruction to which the defendant's exception is referable is the second sentence thereof, the statement that if ''resist-

ance on her part was prevented by terror caused by threats of great bodily harm or by the exhibition of such force on the part of the defendant as made resistance on her part to seem utterly useless, then the law considers such assault to have been made forcibly and against the will of the prosecutrix.'' In our opinion, the instruction as given would be proper only in a case in which the defendant was charged with actual commission of the crime of rape. This defendant was not charged with that crime and no evidence was offered that he did commit it. The instruction was much more favorable to him than he was entitled to expect.

The apprehension expressed by the defendant that the jury might have been misled by that part of the instruction to which he excepted was groundless. The giving of the instruction was not prejudicial to him.

The judgment appealed from is affirmed.

BEAN, J., not participating.